## R. W. GRESHAM (MOTCH & MERRYWEATHER MACHINERY CO.) *v.* UNITED STATES

**No. 4793.**—Invoices dated Reutlingen, Germany, September 18, October 30, 1937.
   Certified September 24, November 6, 1937.
   Entered at Cleveland, Ohio, October 22, December 1, 1937.
   Entry Nos. 626, 851.

(Decided March 15, 1940)

*Tompkins & Tompkins* (*J. Stuart Tompkins* and *Allerton deC. Tompkins* of counsel) for the plaintiff.

*Webster J. Oliver*, Assistant Attorney General (*Richard E. FitzGibbon* and *Daniel I. Auster*, special attorneys), for the defendant.

KINCHELOE, Judge: These two appeals to reappraisement involve the determination of the proper dutiable values of certain machines and parts thereof exported from Reutlingen, Germany, and entered at the port of Cleveland, Ohio. Although both cases were consolidated for the purposes of trial by consent of the parties, each one presents an entirely different question. In the first case, reappraisement 127787–A, the issue involved is whether the machine and parts thereof covered thereby should be appraised on the basis of their foreign value, as found by the appraiser, or whether the cost of production of said merchandise is the proper basis of appraisement, as

claimed by plaintiff. In the second case, reappraisement 127788–A, the question presented is whether the foreign exporter's net list prices are the proper basis for appraisement of the machines and parts covered thereby, or whether certain allowances or concessions are proper deductions from said net list prices in determining the dutiable value of the machines and parts, as claimed by plaintiff.

In the first case, reappraisement 127787–A, the merchandise in question consists of 1 FV hydraulic vertical type cold sawing machine and the following parts: one fine cross adjustment of saw arbor; one hydraulic horizontal clamping arrangement or vise; one adjustable MM graduated wor stop. Appraisement thereof was made on the basis of foreign value. Plaintiff claims that said machine is a special type, entirely different from any other machine; that there is no foreign value, export value, or United States value, as such values are defined in section 402 of the Tariff Act of 1930, for said machine; and that the proper basis of appraisement therefor is cost of production, as such value is defined in section 402 (f) of the Tariff Act of 1930

In support of its contention, plaintiff offered in evidence affidavits of one Fritz Wagner, a manufacturer of cold sawing machines, saw sharpening machines, and saw blades, located at Reutlingen, Germany, which affidavits were admitted and marked Collective Exhibit 1. Said witness testified that for the past 9 years he has been in charge of the business of the foreign exporter of the instant merchandise, whose factory has been for the past 40 years, and is at the present time, the principal market in Germany for such merchandise; and that he is thoroughly familiar with trade conditions, both in Germany and in other countries, relating to the types of machines and parts thereof of which he is a manufacturer. Referring particularly to the hydraulic vertical type cold sawing machine covered by said reappraisement 127787–A, the witness testified as follows:

that said machine and its accompanying parts were unique, specially designed, and specially constructed with special attachments and accessories to meet the particular requirements and specifications of the Carnegie-Illinois Steel Company.

He further testified that he worked on the machine in question at odd times for a period of 8½ months before it was completed; and that "never before or since have I manufactured or freely offered for sale in Germany or elsewhere any machine such as or like this special machine."

At the hearing at Cleveland, Ohio, the port of entry of the instant merchandise, counsel for plaintiff introduced as a witness the general manager of the plaintiff corporation, who testified that he has been connected with said corporation for the past 30 years; that since 1930 he has been the general manager thereof; and that his duties as such include supervision of sales and the purchase of stock equipment.

He further testified that he supervised the purchase of the hydraulic vertical type cold sawing machine in question; that it was of special construction to meet the requirements of the Carnegie-Illinois Steel Co. of Johnstown, Pa., where it was installed; and that it was of vertical construction equipped with a certain holding device and other features to meet the customer's requirements which were special to enable the machine to cut work at angles. Said witness further stated that, throughout an experience of 11 years dealing with and handling cold sawing machines, he had never seen or come in contact with any machine like that involved in said reappraisement 127787–A.

The special agent's report, offered in evidence by defendant and admitted as Collective Exhibit 2, has no probative value, in my judgment, in the instant case. It does not deal with the merchandise in question, but relates solely to certain shipments of different merchandise which were made approximately a year earlier than those under consideration.

In the special agent's report, Collective Exhibit 3, reference is made to the particular hydraulic vertical type cold sawing machine involved in said reappraisement 127787–A. Said report states that the machine with spare parts and accessories was purchased at the prices set forth on the consular invoice. The special agent further reports in said exhibit as follows:

There are about 60 different models of the cold sawing machines and over 1000 spare parts. Only the machines usually in demand are listed.

According to Mr. Grieshaber, manager of the machine department, no regular cost of production is made for the machines not listed. They are constituted of parts of the standard machines and merely require leaving off some parts and adding others. The FV vertical cold sawing machine under investigation was such a machine.

In his brief counsel for defendant states, "It is also stated in Collective Exhibit 3 that said machine is a standard machine and is sold in the home market." I am unable to find any such admission by the special agent in said exhibit. Apparently, said counsel has placed such a construction on the above-quoted portion of said Collective Exhibit 3. However, I am not inclined to so construe it.

Moreover, it will be noted that the above-quoted statements in said exhibit are based on information furnished by the manager of the machine department, whose qualifications and familiarity with the question before me are not disclosed.

Considering said report as a whole, it is my opinion that it is insufficient to contradict the evidence offered by plaintiff in the form of the affidavits, Collective Exhibit 1, and the oral testimony of the general manager of the importer. I therefore find that the FV vertical type cold sawing machine covered by reappraisement 127787–A is a special type of machine, unique in its construction and specially

designed for use in the plant in this country where it was installed; that there was no foreign value, export value, or United States value, within the statutory definitions of such values as contained in said section 402, at the time of exportation of said machine; and that the proper basis of appraisement therefor is cost of production, as defined in section 402 (f) of the Tariff Act of 1930.

Incorporated in his affidavits, Collective Exhibit 1 hereinabove referred to, said affiant Wagner has set forth the figures, taken from his office and factory records, showing the cost of production of the said merchandise, as follows:

| | |
|---|---|
| Cost of materials | RM 2898. 00 |
| Overhead on Materials (15%) | 434. 70 |
| | RM 3332. 70 |
| Cost of labor, 1015½ hours at RM 0.84 | " 853. 02 |
| Plus 174% addition for overhead on fabrication | " 1484. 25 |
| | RM 5669. 97 |
| Plus 17% for salaries | " 963. 90 |
| | RM 6633. 87 |
| Total Cost ex works | RM 6633. 87 |
| Cost of packing | " 170. 00 |
| Freight Reutlingen to Bremen | " 150. 00 |
| F. O. B. Rate | " 35. 00 |
| | RM 6988. 87 |
| Profit | " 1022. 88 |
| Invoiced price to the Motch & Merryweather Machinery Company | RM 8011. 75 |

Since the manufacturing costs as set forth by said affiant are uncontradicted in the record before me, I hold that they properly represent the cost of production, for tariff purposes, of the FV vertical cold sawing machine with the parts heretofore set forth, to wit, one fine cross adjustment of saw arbor; one hydraulic horizontal clamping arrangement of vise, and one adjustable MM graduated wor stop, covered by said reappraisement 127787–A; and that the values set forth on the invoice for said merchandise equal said costs of production.

In the second case before me, reappraisement 127788–A, the merchandise consists of three types of standard cold sawing machines and parts, referred to as the "E. F.," the "F. F.," and the "G. F." types, and one type 1-M saw sharpening machine.

It is conceded that the proper basis of appraisement for said merchandise is foreign value. Appraisement thereof was based on the net list prices as set forth in a price list of the foreign exporter which is attached to and forms part of affidavits heretofore referred to, Collective Exhibit 1, and the special agent's report, said Collective

Exhibit 3. It is the contention of plaintiff that the proper dutiable values of said machines and parts are said list prices, less certain allowances; either the discount or discounts allowed agents and dealers, or the so-called concessions allowed users.

In the affidavits, Collective Exhibit 1, said affiant Wagner testifies that at the time of exportation of said saw sharpening machine and said cold sawing machines the usual wholesale quantity of said machines sold in the ordinary course of trade "to customers in Germany, in the United States, and in other countries is either one or two machines of any given type". Said witness described the sale of his merchandise as follows:

I sell now and for the past five years have sold my merchandise in Germany in three different ways, (a) through general agents, to whom I pay commissions varying from 5 to 10 per cent, the average and usual commissions which I paid to my agents in 1937 being 6 per cent, (b) to dealers, to whom I do now and did in 1937 allow a discount of 15 per cent, the discount which I allowed on the majority of my sales to dealers in Germany from August 15 to November 15, 1937 being 15 per cent, and (c) to consumers to whom I do now and did in 1937 allow a discount from my list prices of from 0 to 3 per cent, the average discount which I allowed on the majority of my sales to users in Germany from August 15 to November 15, 1937 being 2 per cent for cash or payment within 30 days. Also the average price concession on majority of sales to users in Germany from August 15 to November 15, 1937, being 3 per cent.

In the special agent's report, Collective Exhibit 3, it is stated that the "usual quantity is one to six machines in an order"; and that the price is not affected by the quantity purchased. Said report further says:

The Standard cold sawing machines, accessories and parts are sold in the German market and are identical to those exported. The principal purchasers are factories which use the machines in their own works although some sales are also made to dealers who re-sell to factories.

The special agent in said exhibit further states that dealers who resell the machines are allowed a discount of 15 per centum from the list prices; and that

Consumers, i. e. factories who use the machines in their own works pay the list price. In exceptional cases, to meet competition a factory may be granted up to 5% discount.

It is conceded by counsel for plaintiff that most of the sales of the machines in question were, during the period covered by the instant importations, made to users, but it is contended by said counsel that such sales were retail sales; that they were not sales made "in the ordinary course of trade" within the meaning of such statutory phrase as it is to be applied in finding dutiable value under the provisions of section 402 of the Tariff Act of 1930; and that such sales should not be considered in determining the proper dutiable foreign value of said machines. In support of said contention, counsel for plaintiff have

cited in their brief, the cases of *Keve & Young* v. *United States*, 11 Ct. Cust. Appls. 94, T. D. 38747; *United States* v. *J. H. Cottmann & Co.* 18 C. C. P. A. 132, T. D. 44095; *Globe Shipping Co.* v. *United States*, Reap. Dec. 3743; *United States* v. *Frederic George Co.*, Reap. Dec. 2304; *United States* v. *H. N. Hill & Co.*, Reap. Dec. 4008; *Railway Express Agency* v. *United States*, Reap. Dec. 3843. The law applied in each of the cited cases was based on the facts appearing of record therein, and, in my jugment, said cases are not applicable to the present issue, in the light of the established facts herein.

In the *Keve & Young* case, *supra*, it was found that sales of single units to consumers were not sales in wholesale quantities, and therefore the court rightfully disregarded such sales in its determination of the proper dutiable value of the letter press copiers and spare parts involved therein. In the case of *Globe Shipping Co., Inc.* v. *United States*, *supra*, the court followed the same rule where it was shown that sales to consumers in single units were not sales in wholesale quantities. The *Cottmann* case, *supra*, involved determination of the proper dutiable value of certain phosphate rock. There, it was found that sales of said merchandise were made to superphosphate works and to individual farmers and farmer cooperative associations; that the vast majority of sales of said merchandise were made to superphosphate works; and that the sales to said works carried a certain guarantee as to quality. On the basis of such facts, the court held that "the sales made to the superphosphate works are the correct measure of value." In the *Frederic George Co.* case, *supra*, the *H. N. Hill & Co.* case, *supra*, and the *Railway Express Agency* case, *supra*, which are also cited by counsel for plaintiff, the facts upon which the conclusions in said cases were based differ materially from those in the instant case, and therefore said cases have no application herein.

Unlike the cases cited by counsel for plaintiff, it is established of record herein that the machines in question were freely offered for sale to users or consumers in wholesale quantities in the ordinary course of trade in the principal market of Germany. Since it is further established herein that the number sold does not affect the price, I am not presented with the question of "usual wholesale quantities" in a proper determination of the present issue. *Arkell Safety Bag Co.* v. *United States*, Reap. Dec. 4670.

On the established facts, I find that sales of the machines in question to users, or factories who use such machines in their own works, are to be considered in my determination of the proper dutiable foreign value of said merchandise. See *John A. Conkey & Co.* v. *United States*, Reap. Dec. 4229. As aptly stated by our appellate court in the case of *United States* v. *Richard & Co.*, 15 Ct. Cust. Appls. 143, T. D. 42216, "The law is not concerned with the persons who buy, but the manner in which they buy."

The alternative claim thus presented by plaintiff is that since the majority of sales were made to the users of the machines in question with certain allowances or concessions, the proper dutiable values thereof are the list prices set forth in the price list, hereinabove referred to, less the average percentage of each of the allowances granted said class of purchasers. In support of that claim there has been attached to the affidavits, said Collective Exhibit 1, a list of twenty sales of said machines made to users. In fifteen of said sales certain allowances, varying in percentage, were granted the purchaser, and in five of said sales the net list price prevailed. Hence, it is based on the premise that 75 percent of the sales to users of said machines are made with certain allowances or concessions, as disclosed by said list of sales, that plaintiff stresses its contention that such allowances should not be considered as part of the dutiable values of said merchandise.

Section 402 (c) of the Tariff Act of 1930 defines "foreign value" as the market price or value at which merchandise is freely offered for sale to *all* purchasers under the conditions set forth in said section 402 (c). In the case of *United States* v. *A. W. Faber, Inc.* 21 C. C. P. A. 290, T. D. 46817, the Court of Customs and Patent Appeals construed the word "all", as it is used in the phrase "to all purchasers" included in the statutory definition of foreign value as set forth in said section, and stated:

How can it be said that the merchandise in the case at bar was freely offered to *all* purchasers in the usual wholesale quantities and in the ordinary course of trade at a discount of 5 per centum from the list price of the merchandise when, as found by the trial court, only a part of such purchasers in the usual wholesale quantities and in the ordinary course of trade were offered such discount, viz, those who would agree to purchases aggregating in value a specified minimum amount per year? It is clear to us that section 402 (c) does not permit the allowance of the 5 per centum discount here involved under the facts found by the lower court.

It is true that the appellate division of the Customs Court found that a majority of the sales made by the manufacturer were to firms entitled to the 5 per centum discount, but that is only saying that a *majority* of those purchasing in the usual wholesale quantities and in the ordinary course of trade, received said discount, while, to conform to the statute defining foreign value, the discount must be offered to *all* purchasers in the usual wholesale quantities and in the ordinary course of trade.

It is also true that we have held that, in determining what are *usual* wholesale quantities, the major portion of the sales or offers for sale in wholesale quantities should be the criterion, but it does not follow from that fact that a discount from list or invoice prices should be allowed in arriving at foreign value if it is shown that only a majority of the purchasers in the usual wholesale quantities, and in the usual course of trade, receive such discount. The statute reads *all* purchasers, not a majority of the purchasers.

What was said in the *Faber* case, *supra*, may be applied with equal force in the instant case. That a majority of the users of the four

types of machines covered by said reappraisement 127788–A received certain concessions in their purchases of said machines is not the criterion which controls the proper dutiable foreign value of such merchandise, but, rather, it is the value at which all purchasers could buy said machines in wholesale quantities in the ordinary course of trade; and that value, on the basis of the record before me, was the net list price shown in the foreign exporter's said price list. Since it is fairly established herein that sales of the machines covered by said reappraisement 127788–A are not made to *all* purchasers with the concessions claimed by plaintiff, I therefore hold such concessions not to be properly deductible in ascertaining the dutiable foreign value of said merchandise.

During the course of the trial counsel for the defendant conceded that the types "E. F.," "F. F.," and "G. F." cold sawing machines under consideration were imported without roller stands, although the appraiser included the values of such stands in his appraised values of said machines. The record herein shows that the values of roller stands for the types of cold sawing machines in question are as follows: For the "E. F." machine, 155 RM.; for the "F. F." machine, 185 RM.; and for the "G. F." machine, 350 RM. I therefore hold that the proper dutiable values of said standard types of cold sawing machines and parts thereof are the appraised values, less the values of the roller stands therefor as set forth above; and that the proper dutiable value of said type 1–M saw-sharpening machine is the appraised value.

On the basis of the record before me I find the following facts:

(1) That the merchandise covered by reappraisement 127787–A consists of 1 type FV hydraulic vertical type cold sawing machine with parts and accessories, as hereinabove specified.

(2) That there is no foreign value, export value, or United States value for said merchandise as such values are defined in section 402 of the Tariff Act of 1930.

(3) That the proper basis of appraisement for said merchandise is cost of production, as such value is defined in section 402 (f) of said act.

(4) That such costs of production of said merchandise are the invoice values.

(5) That the merchandise covered by reappraisement 127788–A consists of three standard types of cold sawing machines, known as the "E.F.," the "F.F.," and the "G.F." and parts thereof; and one type 1–M saw-sharpening machine.

(6) That the proper basis for appraisement of said machines and parts, the subject of reappraisement 127788–A, is foreign value, as such value is defined in section 402 (c) of the Tariff Act of 1930.

(7) That such foreign values of the said three standard types of cold sawing machines and parts thereof are the appraised values,

less the values of roller stands therefor, as follows: for the "E.F." machine, 155 RM.; for the "F.F." machine, 185 RM., and for the "G.F." machine, 350 RM.

(8) That such foreign value of said type 1–M saw-sharpening machine is the appraised value.

Accordingly, I hold as matter of law:

(1) That the statutory costs of production of the type FV hydraulic vertical type cold sawing machine with said parts and accessories covered by reappraisement 127787–A are the invoice values, as set forth in fact (4).

(2) That the proper dutiable values of the "E.F.," the "F.F.," and the "G.F." types of standard cold sawing machines and parts thereof covered by reappraisement 127788–A are the appraised values, less the values of roller stands therefor, as set forth in fact (7).

(3) That the proper dutiable value of the type 1–M saw-sharpening machine covered by reappraisement 127788–A is the appraised value, as set forth in fact (8). Judgment will be rendered accordingly.