(R.D. 11701)

BARR SHIPPING COMPANY, INC. *v.* UNITED STATES

Entry No. 862397.

(Decided May 15, 1970)

*Barnes, Richardson & Colburn* and *William Eisner* (*Norman C. Schwartz* of counsel) for the plaintiff.

*William D. Ruckelshaus,* Assistant Attorney General (*Arthur E. Schwimmer* and *Brian S. Goldstein,* trial attorneys), for the defendant.

FORD, Judge: This appeal for reappraisement presents for determination the proper dutiable value of a Convair CV–990 Flight Simulator manufactured in England by Redifon, Ltd., and imported for the account of Curtiss-Wright Corporation, Electronics Division, for ultimate installation at American Airlines training facilities in Chicago, Illinois.

The trainer was appraised on the statutory basis of export value as defined in section 402(b), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165, at £218,005, plus 10 percent cost of packing and other necessary costs of £2,000. Defendant in its statement, filed pursuant to Rule 15 of the Rules of the United States Customs Court, alternatively contended for the appraised value on the basis of constructed value as defined in section 402(d), as amended, *supra.* The latter position is not urged in its brief nor was evidence adduced by it in support of said position. The alternative claim is therefore deemed abandoned.

Plaintiff contends alternatively that the proper basis of appraisement is constructed value under section 402(d), as amended, *supra,* at £225,060 or on the basis of export value under section 402(b), as amended, *supra,* at £220,005.

The pertinent statutory provisions involved herein provide as follows:

Section 402(b), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956:

(b) EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time

of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

Section 402(d), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956:

(d) CONSTRUCTED VALUE.—For the purposes of this section, the constructed value of imported merchandise shall be the sum of—

(1) the cost of materials (exclusive of any internal tax applicable in the country of exportation directly to such materials or their disposition, but remitted or refunded upon the exportation of the article in the production of which such materials are used) and of fabrication or other processing of any kind employed in producing such or similar merchandise, at a time preceding the date of exportation of the merchandise undergoing appraisement which would ordinarily permit the production of that particular merchandise in the ordinary course of business;

(2) an amount for general expenses and profit equal to that usually reflected in sales of merchandise of the same general class or kind as the merchandise undergoing appraisement which are made by producers in the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for shipment to the United States; and

(3) the cost of all containers and coverings of whatever nature, and all other expenses incidental to placing the merchandise undergoing appraisement in condition, packed ready for shipment to the United States.

The record herein consists of the oral testimony of two witnesses called on behalf of plaintiff and five documentary exhibits. In addition, counsel for the respective parties have stipulated that the merchandise is not described on the final list, 93 Treas. Dec. 14, T.D. 54521, and was appraised at English pounds 218,005, plus 10 percent, plus cost of packing of £1,000, plus a cost for dismantling and shipping from factory to on-board vessel of £1,000. Plaintiff has accepted the £2,000 figure for packing and dismantling. The parties have also stipulated that "no United States value, as such value is defined in section 402(c), Tariff Act of 1930, as amended by the Customs Simplification Act, existed for such or similar merchandise."

Mr. John W. Balbach, controller and vice-president of Curtiss-Wright Corporation (hereinafter referred to as "Curtiss-Wright") testified that he was contract manager and chief negotiator of said

corporation at the time the contract between Curtiss-Wright, Redifon, Ltd. (hereinafter referred to as "Redifon"), and American Airlines (hereinafter referred to as "American") was being negotiated. His duties at the time involved negotiation of the contract including provisions and clauses in said contract as well as the price.

A flight simulator is a device which is intended to duplicate or reproduce the cockpit of the particular aircraft it is intended to simulate. This device is mechanically, hydraulically and electrically controlled to simulate actual flight and thus enables one to train an air crew for operation of a particular aircraft without ever leaving the ground.

No two simulators are alike since the particular airlines or branches of the military, while using the same aircraft, usually have modifications to suit their needs. Other distinctions may result by virtue of modifications of the aircraft itself by the manufacturer. The latter was illustrated by the witness with respect to the B52 bomber of which 18 simulators manufactured by Curtiss-Wright were not identical due to changes in the aircraft which were designated B52A to B52H.

Mr. Balbach then testified as to how Curtiss-Wright arrives at a price of a simulator manufactured by it. A study of material costs, labor hours required, plus overhead and general expenses is made and then an estimated price is arrived at for presentation to the customer. This price is then subject to negotiation before a final price is arrived at. There are no price lists with respect to the sale and purchase of flight simulators.

The flight simulator involved was not manufactured by Curtiss-Wright nor did it participate in the design, fabrication or installation which was all performed by Redifon. The basic design and development work was performed by Convair and General Electric with American supplying data relative to certain cockpit changes devised to satisfy its pilots.

Curtiss-Wright became involved in this importation as it had been approached by American to produce this flight simulator. American was referred to Redifon by Curtiss-Wright. American however was reluctant to deal directly with a foreign supplier and requested Curtiss-Wright to act as liaison. An agreement, plaintiff's exhibit 2, between Curtiss-Wright and Redifon was entered into for the purpose of defining responsibilities. The agreement made Curtiss-Wright responsible to American for the importation of the simulator and the recipient of payments which in turn were paid to Redifon after deducting import duties, a royalty of 7½ percent, where applicable, and a markup not exceeding 10 percent of Redifon's unpacked ex-works price.

A change order such as exhibit 3 which was the 35th change request is a method enabling the purchaser to modify the simulator to bring it up to date or for other reasons. Curtiss-Wright did not participate

in the price negotiations relative to change orders although it was advised of them in order to keep it fully knowledgeable of the changes. No engineers or technical advisers were sent to Redifon by Curtiss-Wright during the construction of the simulator.

Mr. Balbach testified on cross-examination that the difference in price paid by American to Curtiss-Wright and the amount submitted to Redifon represented approximately $70,000 paid in import duties and approximately 17 percent for overhead and general administrative expenses incurred by Curtiss-Wright, approximately $16,000 profit and a 7½ percent royalty. The royalty is known as the Dehmel royalty which Curtiss-Wright pays on all simulators sold by it even though not manufactured by it. This is based on an agreement with Mr. Dehmel who was the inventor of certain electrical systems used by Curtiss-Wright in the manufacture of its own simulators.

A contract status report designated as S.O. D127 was received in evidence as plaintiff's exhibit 4. This exhibit was prepared one week prior to trial by a Mr. Bushoven who was the accountant at the time of the involved importation and includes the cost of material (the simulator in this case), direct charges and administrative expenses.

Next called on behalf of plaintiff was supervisory import specialist Hyman Golub, who testified that he made the advisory appraisement which was adopted by the appraising official. His addition of 10 percent which was added to the figure of £218,005 was intended to reflect the share of Curtiss-Wright. This 10 percent was intended to represent the amount retained by Curtiss-Wright after deducting all expenses and duties.

Plaintiff's exhibit 5, an affidavit of Eric William Warren, a director of Redifon since 1957, states that the affiant was personally responsible for the division of his company which produced the flight simulator involved herein. There is not nor has there ever been any corporate relationship between Redifon and Curtiss-Wright or American.

The affiant described the function of a flight simulator and stated that each is built to specifications of the customer. Accordingly, the prices are not uniform and do vary widely. The prices are arrived at after technical study and construction cost calculations. Mr. Warren further stated, based upon his trade experience and his familiarity with the British industry manufacturing flight simulators that only two other manufacturers produced flight simulators during the involved period. Neither company was then engaged in producing "sophisticated flight training equipment simulating modern commercial airlines for customers in the United States." During this period, Redifon did not offer the CV–990 flight simulator to any United States purchaser other than American.

Mr. Warren's affidavit further states that Curtiss-Wright had no part in the design and construction of the involved simulator. The function of Curtiss-Wright was to handle details of importation into the United States, delivery to American and billing of American and payment of Redifon as well as general administrative liaison between American and Redifon. The affiant further stated that American insisted upon having Curtiss-Wright as a party to the contract as one it could hold accountable for contract performance. Such service, it was understood, would entitle Curtiss-Wright to a fee over and above the agreed price, unpacked ex-works from Redifon.

Under our valuation statute before consideration may be given to plaintiff's primary claim, constructed value, the basis of export value must be negated. In the case at bar the basis of appraisement is export value which value carries with it the statutory presumption of correctness. Plaintiff contends by virtue of the fact that the imported flight simulator is custom made for the customer, American, no export value may exist. *Automatic Totalisators, Inc.* v. *United States*, 29 CCPA 230, C.A.D. 195 (1942); *R. W. Gresham (Motch & Merryweather Machinery Co.)* v. *United States*, 4 Cust. Ct. 721, R.D. 4793 (1940). Both of these cases involved the valuation statute as it existed prior to the Customs Simplification Act of 1956, *supra.* As we are aware, certain significant changes were made by virtue of this modification. The merchandise involved herein having been stipulated not to be on the final list is controlled by the new language contained in section 402 of the Tariff Act of 1930, as amended, *supra.* One of the changes which so far as is pertinent herein involved sales to selected purchasers. In the event sales are so made the appraiser may utilize such sales provided the price fairly reflects the market value as prescribed by section 402(f)(1)(B), Tariff Act of 1930, as amended. The evidence presented by plaintiff in the form of the affidavit of Mr. Warren establishes in paragraph 7 that the involved simulator was not offered to any United States purchaser other than American. Accordingly, under the statute, American is a selected purchaser, and the presumption of correctness attaching to the appraised value must be considered as having found such fact. In addition, the appraised value carries with it the presumption that it fairly reflects the market value. In order to overcome this presumption, plaintiff must establish by competent evidence that the appraised value is erroneous and must go further and establish some other dutiable value to be correct. 28 U.S.C., section 2633 and the following cases. *I. Arditi* v. *United States*, 50 CCPA 49, C.A.D. 818 (1963); *Brooks Paper Company* v. *United States*, 40 CCPA 38, C.A.D. 495 (1952).

In an effort to establish, as an alternative, export value, which differs from the appraised value, plaintiff offered the testimony of

the supervisory commodity specialist, Hyman Golub, whose advisory appraisement was adopted by the appraising official. Mr. Golub testified that the 10 percent figure added in appraisement was intended to reflect the share of Curtiss-Wright in the sale after deducting expenses and duties. This form of appraisement is severable since it is composed of first cost, plus the 10 percent addition, plus the separately stated packing and dismantling costs which will be discussed, *infra*. *United States* v. *Bud Berman Sportswear, Inc.*, 55 CCPA 28, C.A.D. 929 (1967). In the case of a severable appraisement, the party challenging the appraised value may rely upon the presumption of correctness as to all elements of the appraisement which he does not seek to dispute.

It is basic in this field of jurisprudence that costs and expenses incurred subsequent to the time the merchandise is packed ready for shipment to the United States are not includible in determining export value. *United States* v. *International Commercial Co., Inc.*, 28 Cust. Ct. 629, R.D. 8112 (1952); *Plywood & Door Manufacturers Corporation* v. *United States*, 44 Cust. Ct. 541, R.D. 9581 (1960). This is particularly so when the expense incurred subsequent to the time the merchandise is packed, ready for shipment to the United States, is paid by the purchaser in the United States to another party in the United States. There is, however, an exception to this rule as set forth in *Erb & Gray Scientific, Inc.* v. *United States*, 53 CCPA 46, C.A.D. 875 (1966). In that case, a fee paid by the importer, the sole purchaser, for "New York Office Service and Operation" was mandatory and hence found to be part of the dutiable value. In the case at bar, the factual situation is totally different. Curtiss-Wright was requested by American to act as liaison. The additional 10 percent was, therefore, optional on the part of American and hence not part of the dutiable value.

The parties have agreed that the figure of £2,000 representing packing and the cost of dismantling the equipment and shipping said merchandise from the factory to on-board the vessel is correct.

In view of the foregoing, it is unnecessary to consider the claim of plaintiff that the proper basis of appraisement is constructed value under section 402(d).

On the record herein, I find the following facts:

1. That the merchandise under appeal consists of a CV–990 flight simulator manufactured in England by Redifon.

2. That the merchandise is not described on the final list published by the Secretary of the Treasury pursuant to section 6(a) of the Customs Simplification Act of 1956.

3. That the merchandise was appraised under export value, as defined in section 402(b), Tariff Act of 1930, as amended by the Cus-

toms Simplification Act of 1956 at £218,005, plus 10 percent, plus £2,000 for packing and dismantling costs.

4. That the 10 percent addition represents monies paid to Curtiss-Wright Corporation in the United States at the buyer's option for costs and expenses incurred subsequent to the time when the merchandise was placed in condition, packed, ready for shipment to the United States.

I conclude as matters of law:

1. That export value as defined in section 402(b), Tariff Act of 1930, as amended, *supra*, is the proper basis of appraisement.

2. That the appraisement is severable into first cost, plus 10 percent, plus packing and dismantling costs.

3. That the 10 percent addition is optional and therefore not dutiable.

4. That the statutory value for the merchandise is £218,005 plus £2,000 for packing and dismantling.

Judgment will be entered accordingly.

(R.D. 11702)

DUSHOFF DISTRIBUTING CORP. *v.* UNITED STATES

Entry No. 8281

(Decided May 15, 1970)

*Tompkins & Tompkins (Allerton deC. Tompkins* of counsel) for the plaintiff.
*William D. Ruckelshaus,* Assistant Attorney General (*Robert Richardson* and *John A. Winters,* trial attorneys), for the defendant.

MALETZ, Judge: This is an appeal for reappraisement which presents the question as to the proper dutiable value of various types of ceramic wall tiles and trimmers that were exported from Japan in