AMERICAN EXPRESS CO. *v.* UNITED STATES (No. 2698)[1]

1. REAPPRAISEMENT REVIEW—EVIDENCE.
   The judgment of the board in reviewing a reappraisement will be affirmed if there is any substantial evidence to support it.

2. APPRAISEMENT—FEE PAID FOR MATCHING PEARLS.
   Where it was shown that the purchaser of pearls paid a proper price, which included a substantial profit, a fee which he paid independently to an employee of the seller for matching them should not have been included in the appraised value.

---

[1] T. D. 41553.

United States Court of Customs Appeals, April 17, 1926

APPEAL from Board of United States General Appraisers, Circ. Reap. 35989

[Reversed.]

*Waterhouse & Lockett* (*Charles F. Choate, jr.*, and *Joseph F. Lockett* of counsel) for appellant.

*Charles D. Lawrence*, Assistant Attorney General. (*Oscar Igstaedter* and *Peter A. Abeles*, special attorneys, of counsel), for the United States.

[Oral argument March 16, 1926, by Mr. Lockett and Mr. Igstaedter]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the Board of General Appraisers in reappraisement No. 38830–A.

The merchandise involved consists of 185 pearls imported by the appellant for the account of one George H. Swift, of Boston, Mass.

The pearls were purchased by Swift from Leo Sachs & Co., of Paris, France. They were entered and appraised at the invoice price plus a French tax of 1.3 per centum.

The collector appealed to reappraisement.

On the trial before the general appraiser, the Government introduced in evidence two reports of a Government agent, Exhibits 1 and 2, and rested. The importers introduced in evidence the affidavit of Robert Sachs, one of the members of the firm of Leo Sachs & Co., and that of Herbert Wilfred Mallia, an employee of Sachs & Co., together with the testimony of George H. Swift.

It appears from the testimony of the witness that he was in Paris in the summer of 1924, and, as he desired to purchase pearls which iwould match those in a necklace then owned by his wife, and, as t was believed that Sachs & Co. did not have the same in stock, he entered into an agreement with one Mallia, an expert in such matters, who at the time was employed by Sachs & Co., by which agreement it was understood that Mallia would undertake to procure the pearls desired by the witness, and, for his services in procuring such pearls would receive a large commission, the exact amount not being agreed upon at that time. It further appears that the witness examined hundreds of pearls presented to him by Mallia for examination, and that he eventually purchased 185 pearls from Sachs & Co., at the prices stated in the invoice; that, when Mallia had finished his work and the desired pearls were assembled, the witness and Mallia agreed upon the sum of 175,000 *francs* as the amount which should be paid for the services rendered; that he paid Sachs & Co. for the pearls, and Mallia for his services, and that the sum paid for such services was independent of, and had no connection whatever with, the price paid for the pearls.

Exhibit 3 is an affidavit of Mallia. In it he states that he is an employee of Sachs & Co.; that he was employed by Swift to procure certain pearls not then in the possession of Sachs & Co.; that, in an effort to find the kind and quality of pearls desired by Swift, he spent considerable time outside of his regular work as an employee of Sachs & Co.; that he had expert knowledge and experience in the color, size, quality, and condition of pearls; that his services were worth the sum of 175,000 *francs* paid to him by Swift; that such sum was paid to him for his services and not for the pearls, and that Sachs & Co. did not receive any part thereof.

In Exhibit 4, Robert Sachs, one of the members of the firm of Sachs & Co., stated that Mallia received 175,000 *francs* for his services in securing pearls desired by Swift, which the firm of Sachs & Co. did not have in stock, and that his company received no part thereof.

In Exhibits 1 and 2, a special Government agent confirms the testimony of the witness for the importers. It appears that he made two investigations of the sale of the pearls by Sachs & Co., and of the services rendered by Mallia. His reports show that the firm of Sachs & Co. made a substantial profit on the sale of the pearls procured by Mallia; that the agreement between Mallia and Swift was an independent arrangement, and that no part of the money paid by Swift to Mallia was received by the firm of Sachs & Co.

The following statement appears in Exhibit 1:

* * * Likewise, the item of Fcs. 175,000 does not appear on the records of Sachs & Co., *as this was paid to Mr. Mallia personally and was considered by him as compensation for his efforts and not affecting the price of the pearls which was established by Sachs & Co.* (Italics ours.)

He concludes his report of the facts as they were ascertained by him with the following expression of opinion:

It is *evident* that the sum paid to Mr. Mallia was for his services on *behalf of Mr. Swift*, but his services in this regard consisted largely in effecting a price agreement between the purchaser and the seller, and unquestionably entered into *the cost of the pearls to Mr. Swift.* (Italics ours.)

There is no additional information of consequence contained in Exhibit 2. Upon this record the trial court sustained the entered value. The collector filed an application with the Board of General Appraisers for a review of the findings and judgment of the general appraiser, in pursuance to the provisions of section 501 of the Tariff Act of 1922, the pertinent part of which reads as follows:

Sec. 501. * * * The decision of the general appraiser, after argument on the part of the interested parties if requested by them or by either of them, shall be final and conclusive upon all parties unless within ten days from the date of the filing of the decision with the collector an *application for its review* shall be filed with or mailed to said board by the collector or other person authorized by the Secretary of the Treasury, and a copy of such application mailed to the

consignee, or his agent or attorney, or filed by the consignee, or his agent or attorney, with the collector, by whom the same shall be forthwith forwarded to the Board of General Appraisers. Every such application shall be assigned by the Board of General Appraisers to a board of three general appraisers, who shall consider the case upon the samples of the merchandise, if there be any, and the record made before the general appraiser, and, after argument on the part of the parties if requested by them or either of them, shall *affirm, reverse,* or *modify* the *decision* of the *general appraiser* or *remand* the case to the general appraiser for *further proceedings,* and shall state its action in a written decision, to be forwarded to the collector, setting forth the facts upon which the finding is based and the reasons therefor. The decision of the Board of General Appraisers shall be final and conclusive upon all parties unless an appeal shall be taken by either party to the Court of Customs Appeals upon a question or questions of law only within the time and in the manner provided by section 198 of an act entitled "An act to codify, revise, and amend the laws relating to the judiciary," approved March 3, 1911. (Italics ours.)

In reversing the judgment of the general appraiser, and holding that the sum paid by Swift to Mallia was a proper part of the dutiable value of the pearls, the reviewing court said:

\* \* \* After fully considering the arguments here presented and the record made below, we must confess that *we are unable to believe* that Sachs & Co., who are dealers in these pearls, *deliberately consented to forego any part of their profits in these transactions* in favor of one of their employees who traveled on their time and at their expense. We believe we are nearer the truth in holding that the 175,000 francs paid by Swift to Mallia as a so-called commission properly formed part of the dutiable value of the pearls, and we hereby so find. \* \* \* (Italics ours.)

Is there any substantial evidence in the record to support the judgment of the reviewing court? If so, the judgment must be affirmed. If not, it must be reversed. *United States* v. *Johnson Co.,* 9 Ct. Cust. Appls. 258, T. D. 38215; *Kuttroff, Pickhardt & Co. (Inc.)* v. *United States,* 13 Ct. Cust. Appls. 17, T. D. 40861; *Sandoz Chemical Works* v. *United States,* 13 Ct. Cust. Appls. 466, T. D. 41365; *Metz & Co. (Inc.)* v. *United States,* 13 Ct. Cust. Appls. 412, T. D. 41340; *United States* v. *International Forwarding Co.,* 13 Ct. Cust. Appls. 579, T. D. 41436.

The board in its opinion said that it was unable to believe that Sachs & Co. "deliberately consented to forego any part of *their profits* in these transactions in favor of one of their employees who traveled on their time and at their expense." (Italics ours.) We do not understand that any such claim was made by the importer. The record discloses that Sachs & Co. made a substantial profit on the pearls procured by their employee, and that such profit was included in the entered value. It is possible that Mr. Mallia devoted some effort in the procurement of satisfactory pearls during his regular working hours. However, he stated in Exhibit 3 that he devoted a "very great amount of time during the year 1924 *outside of my regular work for Leo Sachs & Cie.* in hunting up pearls and submitting them to Mr. Swift." (Italics ours.)

The special agent in his first report, Exhibit 1, said positively that the payment of 175,000 *francs* to Mr. Mallia was made for services rendered for Mr. Swift, and that such payment was no part of the purchase price of the pearls.    He did say that the service performed by Mr. Mallia for Mr. Swift "consisted largely in effecting a price agreement between the purchaser and the seller, and unquestionably entered into the *cost of the pearls to Mr. Swift.*" (Italics ours.)

We are unable to find any statement of *fact* in the record which supports the opinion of the special agent that the service performed by Mr. Mallia for Mr. Swift consisted largely, or to any extent, in "effecting a price agreement between the purchaser and the seller."

According to the evidence in the record, the efforts of Mr. Mallia were directed to the securing of satisfactory pearls.    Of course, the sum of money paid by Mr. Swift to Mr. Mallia entered into the cost of the pearls.    Railroad fare paid by the purchaser in an effort to find the pearls he desired was an element of expense which entered into the total cost of those purchased, but such expense is not an element to be considered in determining the foreign or export value of the imported merchandise.

The record before us conclusively shows that the sum of 175,000 *francs* paid by Mr. Swift to Mr. Mallia was no part of the purchase price of the pearls, and that it was not an element to be considered in ascertaining either the foreign or the export value thereof.

In our opinion the finding and decision of the board is not supported by any substantial evidence, and its judgment is *reversed.*