FLOREA & CO., INC. *v.* UNITED STATES

**No. 5907.**—Invoice dated Yokohama, Japan, April 16, 1936.
Certified April 17, 1936.
Entered at New York, N. Y., May 13, 1936.
Entry No. 840447.

(Decided July 19, 1943)

*William Whynman* for the plaintiff.

*Paul P. Rao*, Assistant Attorney General (*Dorothy C. Bennett*, special attorney), for the defendant.

COLE, Judge: During the trial of this case, the defendant offered to incorporate the record in *Florea & Co., Inc.* v. *United States* (Reappraisement 123770–A), 9 Cust. Ct. 645, Reap. Dec. 5733, because of the similarity of issues and merchandise in both cases. Plaintiff objected and insisted so strenuously that the motion of defendant to incorporate the decided case violated the rule invoked in such matters that only after lengthy argument by counsel was it admitted. The record in the previous case being quite lengthy, and adding considerably to the costs in event of appeal, I expressed a willingness to entertain any suggestion plaintiff's counsel would offer as to such part thereof as might be eliminated, because under rule 23 of this court, the incorporation of a record in a decided case, *or any part thereof*, is a matter which, when not consented to, rests entirely within the discretion of the trial judge. For reasons best known to plaintiff's counsel, no such motion was made and there was no response to the court's suggestion.

As the record in the previous case is important toward a proper determination of the instant case, I have not been content to adhere to this ruling without having further studied the proceedings.

Plaintiff filed three appeals to reappraisement (Reappraisements 123770–A, 123771–A, and 123772–A), involving shipments of wool knit gloves from Japan. The incorporated record is the first of the three cases, and was decided adversely to plaintiff, Reap. Dec. 5733, *supra*. In the trial of that case the Government offered to consolidate all

three cases because of similarity of issues and merchandise, but plaintiff's counsel would not agree thereto, although he admitted all three cases covered the same or similar merchandise (p. 88 Record, Incorporated Case).

After receiving the adverse decision in the first case, plaintiff's attorney, the same counsel who appeared in the instant case, filed a motion for rehearing and in support of such motion made the following statement in his brief:

> If the court in its discretion shall grant a rehearing, counsel for the plaintiff will stipulate or consent to the consolidation of the cases now suspended which involve part of the same merchandise and purchased simultaneously in order that the entire issue in the case may be fully determined and covered by one decision. This will avoid the necessity of repetitious trials on the suspended cases and save the time of the court and the office of the Assistant Attorney General.

In other words, according to plaintiff a similarity sufficient to justify consolidation of all the cases did not exist during the trial of the incorporated case and does not now, but in the reasons assigned for a rehearing of the first case a similarity did exist. The entire record herein is convincing, beyond any doubt, that the similarity existing in these cases was apparent from the outset.

If the reason supporting the practice in this court of suspending cases—ofttimes thousands—to await the determination of a test case involving admittedly similar issues and merchandise is to be respected and justify its continuance, such practice as is displayed in this case should be discouraged.

The record in the previous case was properly admitted in evidence and will be considered by me in this decision.

I regard the issue presented by this appeal for reappraisement the same as that which was before the court in the *Florea & Co., Inc.* case, *supra*, the incorporated case. The proper dutiable value of wool knit gloves exported from Japan in April 1936, and entered at the port of New York in July 1936, is involved. It should be noted at this point that the instant case was but recently submitted for decision despite the years intervening since the date of importation. The plaintiff occupies the unusual position of seeking a higher export value than that found by the appraiser, arising by virtue of a Presidential proclamation issued pursuant to the provisions of section 336 of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1336), authorizing the Tariff Commission to "investigate the differences in the costs of production of any domestic article and of any like or similar foreign article," and to report to the President its findings with appropriate recommendations "to equalize such differences," and the Presidential proclamation (T. D. 48183), affecting the instant merchandise, issued on February 21, 1936, and declaring that duty on wool knit gloves from Japan, valued at not more than

$1.75 per dozen, shall be based on American selling price as defined in section 402 (g) of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1402).

The shipment in question included two patterns of such gloves, styles 7107 and 7108, which were entered at the invoice price, representing, as claimed by plaintiff, an export value as defined in section 402 (d) of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1402) of 6.10 yen per dozen, which is equivalent to $1.76 per dozen, based on the applicable rate of exchange (T. D. 48269). The appraiser found an export value for No. 7107 of 5.90 yen ($1.70 U. S. currency) per dozen, and for No. 7108 of 5.85 yen ($1.68 U. S. currency) per dozen, whereupon the provisions of said Presidential proclamation were applied, and the merchandise accordingly appraised on the basis of American selling price at $5.50 per dozen.

Determination of the dutiable value of the present merchandise, however, cannot be properly discussed until action is taken on defendant's motion to dismiss on the ground the appeal before the court is invalid. If the motion is good, the appeal is null and void *ab initio* and therefore the court is without jurisdiction to find value. *United States* v. *Daniel F. Young, Inc. (Minobu Trading Corp.) et al.*, 27 C. C. P. A. 124, C. A. D. 73.

It is the contention of defendant that plaintiff violated the provisions of section 481, 482, 484, and 485 of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1481, 1482, 1484, and 1485), requiring all invoices covering imported merchandise to set forth essential facts, including the purchase price, necessary to a proper appraisement, examination, and classification, and that therfore the appeal is null and void under that part of section 501 of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1501), which says that "No appeal filed by the consignee or his agent shall be deemed valid, unless he has complied with all the provisions of the act relating to the entry and appraisement of such merchandise." The same motion was made in the incorporated case, but the trial judge denied it at the hearing without comment.

The sections of the statute cited in support of the motion evidently were inspired by the equity maxim that "He who comes into equity must come with clean hands."

The factual basis for this motion is contained in the oral testimony of one witness, which is supported by reports (defendant's exhibits 1 and 3, and defendant's collective exhibits 4 and 5), of a customs agent who investigated the transaction in Japan. The witness, Melvin Poons, stated that, at the time of exportation of the merchandise in question, he was a partner, in charge of the Yokohama office, in the Merchandise Trading Co., an exporting firm in Japan that worked under contract on a commission basis for plaintiff, arranging its purchases and shipments. The agreement was effected to meet the usual

practice in the Japanese market, requiring all shipments, from manufacturers there to importers here, to be handled through exporting houses. The witness testified that the shipment in question represented a sample order of two new patterns of wool knit gloves; that the treasurer of the plaintiff corporation negotiated the purchase directly with the manufacturer, Hirano Jacket Co. of Tokio; and that he had no knowledge of the transaction until the goods were delivered by the manufacturer for shipment, with a bill showing prices of 5.90 yen ($1.70 U. S. currency) per dozen for quality 7107 and 5.85 yen ($1.68 U. S. currency) per dozen for quality 7108. He stated there was no impropriety committed by plaintiff in actually purchasing these goods so long as shipment was made through the exporting house, which was followed. Referring to his preparation of the consular invoice, in connection with making the goods ready for shipment, the witness stated that "The invoice was falsified at the request of Mr. Melvin Adler, who asked us to invoice these numbers at 6 yen 10 ($1.76 U. S. currency) to avoid paying duty under the Presidential proclamation," and described his action as an "accommodation" for a customer. He explained the method of payment as follows: A letter of credit, based on the fictitious price of 6.10 yen shown on the invoice, was prepared by plaintiff in favor of the Merchandise Trading Co., and subsequent allowance was given by the latter to plaintiff through issuance of a credit note in an amount equal to the difference between the invoice price and the actual purchase prices, the exporter's 5 per centum commission being included in both amounts to effect proper adjustment. The testimony relating to this exchange of financial instruments is corroborated by documentary proof, collective exhibit 15 in Reappraisement 123770–A, the incorporated case, in the form of letters from the Merchandise Trading Co. to plaintiff, one dated April 22, 1936, and the other May 15, 1936, and a photostat copy of the credit note, Number 21. The letter of April 22, 1936, referring specifically to the shipment in question reads:

*Yokohama, 22nd April, 1936.*

Messrs. Florea & Co.,
200 Madison Avenue,
New York City.

Dear Sirs:

We are enclosing herewith our credit notes Nos. 21 and 22 covering difference between invoice price and actual buying price on two lots of gloves, as per our invoices #015 and #022.

As you no doubt have heard from Mr. Adler these goods were invoiced at ¥6.10 in order that they may come in under the 50% duty and not be subject to the new tariff which has been passed in the U. S. A.

Very truly yours,

MERCHANDISE TRADING CO.

The letter of May 15 refers to transactions not involved here, but attached thereto was a statement of plaintiff's account with the exporting company, as of April 30, 1936. The witness testified that the statement was rendered in the ordinary course of business, and that it was never disputed by plaintiff. He explained the debits and credits set forth therein, and identified an entry of April 17 as being the allowance granted, outlined in previous testimony, on the shipment of the gloves in question.

Both the president, George Florea, and the treasurer, Melvin Adler, of the plaintiff corporation denied the statements of defendant's witness relating to the purchase, invoicing, and ultimate payment of the shipment under consideration. The treasurer stated that the usual trade procedure in Japan would not permit him, as an American importer, to make purchases direct from the manufacturer, but required him to arrange them through an exporter, which was done in this case at a price of 6.10 yen per dozen. He testified that he was seriously ill in a hospital in Kobe, Japan, from March 15 to April 15, 1936, during the period when the present merchandise was shipped, although he admitted sitting in on a conference with a representative of the manufacturer and the exporter in negotiating the purchase of these gloves. The president, who held the position since the corporation was organized in 1929, testified that he had entire charge of all affairs of the concern. He admitted receipt of the letter of May 15, 1936, hereinabove referred to, but denied ever having the letter of April 22, 1936, *supra*, and did not remember getting the above-mentioned credit note, although, in later testimony, he conceded that accountants handled the financial records of his business and that he did not see all of the mail received by his firm. Both officials of the plaintiff corporation categorically denied they instructed their exporting representative, said Melvin Poons, to falsify the invoice in question or any other invoice.

Plaintiff's testimony does not warrant the effect of an absolute contradiction of the witness Poons, in the light of the evidence offered by the customs agent. On the contrary, the oral testimony of the Treasury representative, coupled with his reports of the investigation conducted in the foreign market, between May 15, 1936, and December 1936, lend much support to the details outlined by defendant's witness. The customs official testified that he first called at the office of the Merchandise Trading Co. and obtained from the said Poons information related in the latter's testimony herein, as well as the name of the manufacturer. He then proceeded to the office of the Hirano Jacket Co. where he interviewed the assistant sales manager and inspected the bookkeeping records. His findings are included in the report, defendant's exhibit 1, which says in part:

On May 20, 1936, a visit was made to the Tokyo factory of Hirano Jacket Co., where Mr. Y. Nobata, Assistant Sales Manager, was interviewed and the following information was secured.

Mr. Nobata confirmed the statements as above reported that the gloves in question were ordered by Mr. Adler of the Florea & Co. as a sample order. No contract was drawn up, because the buyer is one of the large customers of the Hirano Jacket Co. and the verbal order was considered sufficient for the initial production of a few hundred dozen of gloves.

Mr. Nobata showed his firm's records of deliveries on the gloves in question as follows:

| Style | 7108 | 21 dozen | March | 4, 1936 | at ¥ 5.85 |
|-------|------|----------|-------|---------|-----------|
| " | " | 25 " | " | 11, " | at 5.85 |
| " | " | 50 " | Apr. | 3, " | at 5.85 |
| " | " | 50 " | " | 3, " | at 5.85 |
| " | 7107 | 100 " | " | 10, " | at 5.90 |
| " | 7108 | 96 " | " | 12, " | at 5.85 |

Prices net, packed and delivered to Yokohama.

The other reports (defendant's exhibit 3 and defendant's collective exhibits 4 and 5) deal largely, if not entirely, with documentary evidence. Exhibit 3 confirms the credit-note phase of the transaction. Collective exhibit 4 embodies the letters of April 22, 1936, and May 15, 1936, previously discussed herein, as well as correspondence purporting to show an attempt by Konan Shokai—an exporting firm employed by plaintiff after it severed connections, about the time the transaction under consideration was consummated, with the Merchandise Trading Co.—to have the Hirano Jacket Co. write to plaintiff relieving the treasurer of all responsibility in connection with the purchase of the gloves in question, and the refusal of the Japanese manufacturer to do so. The report, collective exhibit 5, relates to a letter alleged to have been dated November 7, 1936, but actually written in December 1936, by the manufacturer's assistant sales manager to plaintiff, complying with the earlier request of Konan Shokai and shifting responsibility for the purchase to Melvin Poons of the Merchandise Trading Co.

A question similar to that presented by defendant's motion was before the court in *United States* v. *F. B. Vandegrift & Co. et al.*, 26 C. C. P. A. 360, C. A. D. 42, wherein the Government alleged that a license fee, not included upon entry in the importer's claimed purchase price of certain machines was actually a part thereof. Commenting on the force and effect of the statutory provisions invoked, the court said:

The so-called license fee of $1,200 per machine was not referred to either on the invoices or on the entries, and it is contended here by counsel for the Government that it should have been included in both; that, as it did not appear on either, the importers failed to comply with the provisions of sections 481, 482, and 485 of the Tariff Act of 1930; and that, by virtue of the provisions of section 501 of that act, the appeals for reappraisement were invalid and should have been dismissed by the appellate division of the Customs Court.

\*      \*      \*      \*      \*      \*      \*

If, as contended by counsel for the Government, instead of $1,800, as stated in the invoices and entries, the purchase price was $3,000 per machine, the invoices and entries are not in compliance with the provisions of sections 481, 482, and 485, *supra*, and, by virtue of the quoted provisions of section 501, the importers' appeals for reappraisement are invalid and should be dismissed.

In the cited case, the importer's entered value was supported by substantial evidence, and the court, therefore, held the appeals to be valid.

In the present case, however, the preponderance in weight of the evidence shows that plaintiff failed to meet the requirements of said sections 481, 482, 484, and 485.

To deny defendant's motion would require repudiation of the reports of a duly authorized representative of the United States Government acting in his official capacity, and after I had full opportunity to observe his appearance and conduct on the witness stand. They were prepared during the period of investigation in the foreign market and when pertinent information was readily available. They are official documents submitted pursuant to statutory authority, and being admitted in evidence they are received for their factual value from a disinterested witness to aid the court in its proper determination of the case.

The admission in evidence of the said reports reflects a different attitude from that taken by the court in the incorporated case, where they were rejected. Although plaintiff took exception to the rulings admitting the reports, no argument is set forth in counsel's brief in support thereof. The change in ruling—admitting reports here which were excluded in the first case—is based on a different judicial interpretation of the following language of section 501, *supra:*

In finding such value [dutiable value] affidavits and depositions of persons *whose attendance can not reasonably be had,* price lists and catalogues, reports or depositions of consuls, customs agents, collectors, appraisers, assistant appraisers, examiners, and other officers of the Government may be admitted in evidence. [Italics mine.]

In the former case, the trial judge held that the italicized clause in the above quotation refers to reports of customs agents, as well as to its immediate antecedent, "affidavits and depositions of persons," and it was based on that reasoning the court concluded the reports were not admissible when, as prevailed at the time, the author of the documents was present in court, and his oral testimony, the best evidence, was available. I cannot accept this construction of the statute under consideration.

There can be no doubt as to the intent of the Congress in its enactment of said section 501 to permit the receipt in evidence of reports of customs agents. The Government has granted importers the privilege of presenting their grievances before this specially created tribunal and has been most liberal in safeguarding rights of equal dignity

and importance with those of other courts of record, to them. In litigation growing out of the appraisement of imported merchandise, the Government must of necessity resort to investigations, in most instances far from the port of entry. Experienced and reliable Government agents designated for such purpose cannot be available at all times when cases in which they are interested are before this court. If they are, they should be compelled to take the stand if demanded by either party, and be subjected to any cross-examination involving their association with the investigation entrusted to them and the report as a result thereof. But the report, itself, should not be excluded because the agent who prepared it is in court. The language of the statute is plain and unambiguous, expressing a legislative intent that relaxes the hearsay rule and permits such reports to be admitted in this class of cases. And the acceptance of such reports for their evidentiary value applies with equal propriety even though the author, for obvious and sound reasons, is not present at the trial. The conclusion on this proposition is in harmony with views of this court set forth in *Luigi Vitelli Elvea, Inc.* v. *United States*, Reap. Dec. 5661.

The motion to dismiss the appeal for reappraisement as invalid is granted and judgment will be rendered accordingly.

The disposition of this case as hereinbefore set forth requires no further comment, but the extent to which the litigation has been presented and my close association with it prompts an observation as to other questions raised herein. The proof that was submitted falls far short toward meeting the burden imposed on the plaintiff to establish all the elements included in the statutory definitions of dutiable values set forth in section 402 of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1402).