(C.D. 2236)

RICO PRODUCTS CO.
H. H. ELDER & CO. ET AL. } *v.* UNITED STATES

United States Customs Court, First Division

(Decided February 1, 1961)

*Lawrence & Tuttle* for the plaintiffs.
*George S. Leonard*, Acting Assistant Attorney General, for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

MOLLISON, Judge:   The protests enumerated in the attached schedule were submitted for decision upon stipulation of counsel for the parties reading as follows:

IT IS HEREBY STIPULATED AND AGREED by and between counsel for the plaintiff and the Assistant Attorney General for the United States that the items marked "A" and initialed PFF (Examiner's Initials) by Examiner P. F. Feran (Examiner's Name) on the invoices covered by the protests enumerated in the attached Schedule "A" and assessed with duty at 10% ad valorem under Par. 405 of the Tariff Act of 1930 consist of sticks of wood similar in all material respects to the merchandise the subject of *Rico Products Co. et al.* v. *United States*, C.D. 2159, wherein the Court held that said articles were properly free of duty under Par. 1806 of the Tariff Act of 1930.

IT IS FURTHER STIPULATED AND AGREED that the record in *Rico Products Co. et al.* v. *United States*, C.D. 2159 be incorporated in the record in these cases and that the protests be submitted on this stipulation, the same being limited to the items marked "A" as aforesaid.

IT IS FURTHER STIPULATED AND AGREED that there is now on file with the Collector of Customs at the port of Los Angeles a power of attorney to file protests in favor of Lawrence & Tuttle, Horace Holloway Elder, Elaine Frances Overacker or any one of them executed by two of the partners of Rico Products Co.

IT IS FURTHER STIPULATED AND AGREED that there is now on file with the Collector of Customs at Los Angeles a power of attorney to file protests in favor of Lawrence & Tuttle, Horace Holloway Elder, Elaine Frances Overacker or any one of them signed by Roy John Maier, President of Roy J. Maier Products.

It seems clear that counsel for the parties considered it necessary, or at least expedient, to stipulate the matters contained in the third and fourth paragraphs quoted above for the reason that, attached to the "Report of the Collector on Protest," customs Form 4297, in each case is a memorandum or note in language of which the following is typical:

In accordance with section 17.2(a) of the Customs Regulations, as amended by T.D. 54080, the court is advised that, at the time this protest was filed, the agent or attorney (H. H. Elder) who made, signed, and filed the protest was not named in a power of attorney authorizing such agent or attorney to make, sign, and file the protest. Therefore, the collector has not reviewed or modified or affirmed the protested decision as required by section 515, Tariff Act of 1930, for the reason that it has not been established that the protest was filed by a person authorized by section 514, Tariff Act of 1930.

Each of the protests has the name of the importer of the merchandise (Rico Products Co. or Roy J. Maier Products) typewritten at the end thereof, followed by the handwritten name "H. H. Elder" or "E. F. Overacker" and the words "Atty. in Fact." Each protest bears the printed legend "Notify: Lawrence & Tuttle, Attorneys, 351 California Street, San Francisco 4."

In recent rulings, involving similar situations, the third division of this court has held that by the memorandum or note transmitted to the court by the collector, and above quoted, that officer has attacked the validity of the protest "and put this court on notice that it is his contention that it has not been established that the protest was filed by a person authorized by section 514, Tariff Act of 1930." *Hud-*

*son-Rissman and H. H. Elder & Co.* v. *United States*, 44 Cust. Ct. 453, Abstract 64140; see also *Hudson Rissman* v. *United States*, 45 Cust. Ct. 249, Abstract 64482. In each of those instances, the court set aside the submission of the cases and placed the same on trial calendars in order that the merits of the issue raised by the collector might be established.

Section 17.2(a) of the Customs Regulations, as amended by T.D. 54080, provides as follows:

17.2 Power of attorney to file protest.—(a) Except as hereinafter provided in this paragraph, no protest signed by an agent or attorney shall be granted or denied by the collector unless there has been filed or is filed with the protest in the collector's office a power of attorney on customs Form 5295 or 5295–A or other form as explicit in its terms as is the prescribed customs form, authorizing such agent or attorney to make, sign, and file the protest. Such powers of attorney issued by a partnership shall be limited to a period not to exceed two years from the date of receipt thereof by the collector. All other powers of attorney may be granted for an unlimited period. Any power of attorney shall be subject to revocation at any time by written notice given to and received by the collector. When a protest is filed by an agent or attorney not named in a power of attorney as required by this section, it shall be numbered and stamped with the date of receipt in order to establish whether it was filed within the period prescribed by section 514, Tariff Act of 1930. All information customarily furnished to the United States Customs Court and the Assistant Attorney General in the case of a valid protest should be supplied in the usual manner in connection with the merits of the purported protest together with a request to the Assistant Attorney General to move the United States Customs Court to dismiss the purported protest because of the lack of timely authority of the agent or attorney to file the protest in behalf of the principal. The purported protest shall not be granted or denied by the collector but shall be transmitted, together with the entry and accompanying papers and all exhibits connected therewith, to the United States Customs Court, with a communication explaining to the court that the agent or attorney who filed the purported protest was not named in a power of attorney, and that the collector has not reviewed and modified or affirmed the protested decision as required by section 515, Tariff Act of 1930, for the reasons that it has not been established that the protest was filed by a person authorized by section 514, Tariff Act of 1930.

If it was the intent of the third and fourth paragraphs of the stipulation to establish the authority of H. H. Elder or E. F. Overacker to file the present protests in accordance with the provisions of section 17.2(a), *supra*, of the Customs Regulations, we think the language used is insufficient for that purpose. While it indicates that "now" a power of attorney is on file with the collector of customs— "now" presumably being the time of filing the stipulation with the court on December 8, 1960—there is nothing to show that such power of attorney was on file at the time the protests were filed, or that the present power of attorney has any retroactive effect, or that the acts of H. H. Elder or E. F. Overacker as agents or attorneys in fact in filing the protests were ratified by the principals named in the pro-

test, who are, it appears from an examination of the entries, the actual importers of the merchandise involved.

However, the question arises in the mind of the court whether the action of the collector in transmitting to the court the memoranda or notes, hereinbefore quoted, amounts to a raising in this court of the issue of the validity of the protests as not having been filed by persons authorized by section 514, Tariff Act of 1930, so to do.

There does not seem to be any question but that if the protests had been filed by the actual importers of the merchandise, in whose names they are made, no question of their validity on the score of proper parties would have been raised. Nor does there seem to be any question but that the collector has not asserted that agency in Elder and Overacker to file protests in the names of the actual importers did not *in fact* exist at the time the protests were filed. The collector's statement in the memoranda or notes is only to the effect that proof of such agency was not made before him in the manner and under the circumstances detailed in section 17.2(a) of the Customs Regulations.

Further, we may say that a reading of the provisions of section 17.2(a), *supra*, does not indicate that it was the intent thereby to establish a condition precedent to the validity of protests filed by agents of persons named in section 514 as those who may file protests (i.e., "the importer, consignee, or agent of the person paying such charge or exaction, or filing such claim for drawback, or seeking such entry or delivery"). Seemingly, it was intended only to govern the action of the collector in *his* treatment of protests filed with him insofar as the statute empowers him to consider the same.

A protest filed under the terms of section 514 of the Tariff Act of 1930 is a document seeking, successively, two different forms of relief. Section 515, Tariff Act of 1930; *United States* v. *Straus & Sons et al.*, 5 Ct. Cust. Appls. 147, T.D. 34193. In its inception, it seeks administrative relief through the power granted the collector by statute to review his decision in the matter and to modify or affirm the same within 90 days after the filing of the protest. Should his determination be to affirm his original decision, or should 90 days elapse after the filing of the protest, the collector has no further function except to transmit it to this court.

When that happens, the same document which had formerly been a request for administrative relief becomes the initial pleading in a case or controversy in this court, and its treatment and disposition are governed by the laws and rules relating to practice and procedure before judicial tribunals. *Pittsburgh Plate Glass Co.* v. *United States*, 2 Ct. Cust. Appls. 389, T.D. 32162; *J. H. Lichtenstein & Co.* v. *United States*, 175 Fed. 1016.

In this court, the collector is not a party to the suit, and the controversy is between the plaintiff protestant and the United States

(*Bullocks* (*Inc.*) v. *United States*, 61 Treas. Dec. 718, T.D. 45552).
See also *United States* v. *Reedy Forwarding Company a/c Ellis Sales
Company*, 25 Cust. Ct. 469, 471, Reap. Dec. 7919; and *West End Auto
Wrecking Co., Inc., et al.* v. *United States*, 29 Cust. Ct. 548, 551,
A.R.D. 7.

The plaintiffs in the cases at bar represented by a firm of attorneys, each of the living and active members of which, so far as the court is aware, are members of the bar of this court in good standing.

The United States, defendant, is also represented by counsel in the person of the Assistant Attorney General, Civil Division, and a staff of attorneys headed by the Chief of the Customs Section of that division. At no time has the defendant, through its attorney or his assistants, raised the issue of the validity of the protests in this court.

We think the situation is virtually on all fours with that which obtained in the case of *Yee Chong Lung & Co. et al.* v. *United States*, 11 Ct. Cust. Appls. 382, T.D. 39191, and is governed by the decision in that case. There, as here, a customs regulation (article 221, Customs Regulations of 1915) provided for the filing, in the customhouse, of powers of attorney authorizing agents to file protests in the names of principals who were owners, importers, or consignees of imported merchandise against the collector's decisions on which protests might be filed. The protests filed in that case were signed in the names of the actual importers "By F. L. Lawrence, atty." and "By R. C. Robinson."

In that case, too, the collector noted in his letters transmitting the protests to the predecessor of this court that there was no power of attorney on file authorizing either Lawrence or Robinson to sign for the actual importers.

A majority of the division of the predecessor of this court having cognizance of the subject matter held that the protests were insufficient "there having been no proof given at the hearing that the persons who signed the protests sustained the relation to the parties or merchandise mentioned in the statute."

Upon appeal to the predecessor of our appellate court, it was pointed out that—

In considering this case it must not be overlooked that no claim is made by anybody that importers had not in fact given authority to Lawrence and Robinson to sign and file these protests for them.

The court, therefore, found the same situation to obtain in that case that we find here—that nobody challenged the *fact* of agency in the signers of the protests to sign and file protests in the names of the actual importers. Consequently, there was no burden cast upon those who asserted themselves to be agents to prove that fact.

If any challenge was made, it was a charge that the customs regulations relating to the filing of powers of attorney authorizing the filing of protests had not been complied with. The court noted that the provisions of those regulations were permissive and not mandatory and did not constitute a condition precedent to the filing of a valid protest by an agent on behalf of his principal.

While the present regulations on the subject, section 17.2, *supra*, are couched in what would seem to be language of a mandatory character—using the term "shall" rather than the term "may," as found in article 221, Customs Regulations of 1915—actually, as we have hereinbefore stated, they amount to nothing more than a prescription of the kind of proof of agency which shall be required by collectors for the purposes of *their actions* upon protests, and instructions to guide collectors should such proof be lacking. They do not appear to be mandatory in the sense of imposing a requirement not made by the statute with respect to the filing of protests, and, indeed, if that were their purport, it is highly questionable whether they would be lawful.

The predecessor of our appellate court did not rest its decision upon the foregoing ground alone, however, but reasoned further as follows:

But aside from this, it has long been and now is the law of the United States that the appearance of an attorney in court for a party is evidence of his authority, or, as stated in Hill *v.* Mendenhall (88 U.S. 453):

When an attorney of a court of record appears in an action for one of the parties, his authority, in the absence of any proof to the contrary, will be presumed. A record which shows such an appearance will bind the parties until it is proven that the attorney acted without authority.

See also Osborn *v.* United States Bank (9 Wheat. 738 at 830); Aaron *v.* United States (155 Fed. 834); Underfeed Stoker Co. *v.* American Ship Windlass Co. (165 Fed. 65); Brown *v.* Arnold (131 Fed. 723 at 725); Treat *v.* Tolman (113 Fed. 892).

This last-cited case clearly points out the distinction between an attorney in fact and an attorney at law.

In the case at bar Mr. Lawrence has appeared as attorney for the importers and conducted for them the litigation of the issues raised by the protests. Applying the rule of the cases last-above cited, it must be presumed that he had authority so to do. The importers by him have recognized the protests as theirs, prosecuted the same before the board, and tried the issues made thereby. From all this it must, at least prima facie, be presumed that the protests were authorized and filed by the authority of the importers.

The Board of General Appraisers is a judicial tribunal with records. It has adopted rules for the admission, enrollment, and disbarment of attorneys practicing before it. Undoubtedly it intends to accord, and should accord, such attorneys the rights, privileges, and authorities with which attorneys in other courts are presumed to be invested.

Accordingly, we hold that the validity of the protests in their inception and in their prosecution before this court has not been brought into question, in this court, and proceed to determine the issues raised by the protests on their merits by the evidence offered to us as repre-

sented by the stipulation of counsel and the record in a former trial incorporated as part of the record herein by the said stipulation.

Accepting the stipulation as establishing the facts therein recited, and following our decision in the cited case, and on the entire record before us, the claim made in each of the protests for free entry under paragraph 1806, Tariff Act of 1930, is sustained only as to the items marked and initialed on the invoices by the customs examiner as above described.

Judgment will issue accordingly.