(Reap. Dec. 10750)

F. W. MYERS & CO., INC. *v.* UNITED STATES

Entry No. A 7229.

(Decided May 6, 1964)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiff.
*John W. Douglas*, Assistant Attorney General (*Herbert L. Warren*, trial attorney), for the defendant.

DONLON, Judge: The issue raised by plaintiff's appeal is whether the sum of $1,900, which was included by the appraiser at Port Huron,

Mich., as part of the constructed value of a church pipe organ imported from Canada, is properly a part of statutory value computed on that basis. Plaintiff argues that it is not.

The pipe organ in question was built by Casavant Freres, Limitee, of St. Hyacinthe, Quebec, for St. Mary's Church, of Westphalia, Mich. It was entered at Port Huron on February 23, 1962. Counsel for the parties stipulated that the organ is not an article enumerated in the final list of the Secretary of the Treasury (T.D. 54521), effective February 27, 1958.

Defendant's statement, filed under rule 15, shows that appraisement was on the basis of constructed value; and plaintiff, in its rule 15 statement, accepts constructed value as the proper basis of appraisement. The controversy is as to the amount of that value, and more particularly as to whether the disputed item of $1,900 is properly one of the statutory elements of constructed value.

Section 402 (d), as amended, is as follows:

(d) For the purposes of this section, the constructed value of imported merchandise shall be the sum of—

(1) the cost of materials (exclusive of any internal tax applicable in the country of exportation directly to such materials or their disposition, but remitted or refunded upon the exportation of the article in the production of which such materials are used) and of fabrication or other processing of any kind employed in producing such or similar merchandise, at a time preceding the date of exportation of the merchandise undergoing appraisement which would ordinarily permit the production of that particular merchandise in the ordinary course of business;

(2) an amount for general expenses and profit equal to that usually reflected in sales of merchandise of the same general class or kind as the merchandise undergoing appraisement which are made by producers in the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for shipment to the United States; and

(3) the cost of all containers and coverings of whatever nature, and all other expenses incidental to placing the merchandise undergoing appraisement in condition, packed ready for shipment to the United States.

The official papers were introduced into evidence. Plaintiff put Mr. Jean G. Roy on the stand.

Mr. Roy said that he has been in charge of the cost accounting department of Casavant Freres, Limitee, for 6½ years, and that, during the last 2½ years, he has been the "production controller." He said that his "job as the production controller is to issue shop orders for each organ for each contract we have to work on. And then week after week I follow the progress of each contract." (R. 7.)

For this organ, the contract price was $18,935, in United States currency. That was a price for the *organ* delivered and installed in the church at Westphalia, and included also United States duty.

The organ was entered at a value of $14,940, which plaintiff arrived at by deducting from the contract price, $18,935, three items which it claims are not part of constructed value, namely:

| | |
|---|---|
| Freight from factory to destination | $ 601 |
| Installation expense | 1, 900 |
| Duty | 1, 494 |
| | $ 3, 995 |

There is no dispute as to freight or duty. Appraisement was at $16,840, that is, at the entered value of $14,940, plus $1,900, the installation expense.

Mr. Roy testified that the sum of $1,900 was paid by Casavant to its Detroit representative for installing the organ in St. Mary's Church. (R. 12.) Mr. Roy also testified that this payment of $1,900 did not represent any part of the cost of work done at the factory in St. Hyacinthe. (R. 13.) The price of $18,935 included freight to destination, installation expense in the United States, and United States customs duty. (R. 13.)

Defendant introduced no proofs. In its brief, defendant relies on two arguments.

The first of these is that plaintiff has not overcome the presumption of correctness that attaches to the appraiser's valuation.

The importer's burden of proof in reappraisement is twofold: First, to show facts which establish that the appraisement was not correct; and, second, to show facts which prove the correctness of some other value. Plaintiff's burden of disproof and proof relates only to the elements of appraisement that are in controversy. Controversy may be as to the basis of appraisement; or, accepting the basis which the appraiser used, there may be controversy as to some or all of the statutory components of that basis. The proofs which plaintiff is required to adduce, either to disprove correctness or to prove some other value, are only those proofs which concern the issue controverted in the case. Both plaintiff and defendant are to assist the court in framing the issues, that is, identifying what the area of controversy is.

The difficulty here is that defendant declined to do this, as the following colloquy from the record shows:

MR. WARREN: * * * The item on the papers listed as a general expense, I mean an installation expense, we contend goes into one of those two sections.

JUDGE DONLON: And you are unable to inform the court in which one of those components it has been added?

MR. WARREN: We feel it fits under either or both, fabrication or general expense.

JUDGE DONLON: I am trying to find out where it was put in by the appraiser.

MR. WARREN: I cannot tell, your Honor. [R. 3.]

There can be no presumption that the appraiser's value component under section 402(d), subparagraph (1), was correct, or that his value

component under subparagraph (2) was correct, for the reason that defendant did not, or would not, say what those components were. Defendant's failure, or inability, to identify how the disputed cost entered into appraisement, precludes presumption that the unknown is correct. There is nothing before the court, as to the constructed value components of subparagraphs (1) and (2), section 402(d), as found by the appraiser, which the court can find to be presumptively correct.

However, plaintiff has adduced uncontradicted proofs that $1,900, the disputed cost, was paid in the United States for work that was done in the United States, and that this payment of $1,900 did not cover any part of the work done in the Canadian factory. The proofs show that $1,900 was paid to install the imported organ in a church in Michigan. Even if there were a presumption, plaintiff's proofs have overcome it.

Defendant's second argument is that, even if the court should find (as it does) that $1,900 was the cost of installing the organ in Michigan, nevertheless, that cost is part of the constructed value of the merchandise as imported. Basis of this argument appears to be that this was a made-to-specifications organ, that the contract of sale called for installation of the organ in the Michigan church which placed the order, and that installation there was included in the purchase price.

Defendant cites two cases in support of this argument. Neither, in my opinion, is authority for the proposition for which it is cited.

In *Fergus Imported Cars, Inc.* v. *United States*, 52 Cust. Ct. 550, Reap. Dec. 10675, automobiles that were manufactured in and exported from Germany were appraised on the basis of cost of production, under section 402a(f), as amended. The importer accepted cost of production as the basis of value, but challenged certain items which the appraiser had included in computing that value. The disputed costs were stipulated to be those identified as "Development and Testing including Design" and "Inspections station labor." The appraiser included those two items as part of the cost of materials and fabrication of the imported automobiles.

As to the item described as "Development and Testing including Design," the importer alternatively claimed that it was a capital expense, rather than a production expense; or that, if a production expense, then it was an item of general expense rather than a cost of materials and fabrication. The item described as "Inspections station labor" was conceded to be part of general expenses, rather than one of the costs of materials and fabrication. The trial judge said:

* * * there can be little doubt that the cost of automobile production designs is properly included within the cost of fabrication and processing, whether or not such designs are physically employed as processing equipment, and if the item "Entwicklung, Versuche" [Development and Testing including Design], includes

designs for new models, under the circumstance that there is no further break-down, as between design on the one hand and general development and testing on the other, which latter conceivably might respond to designation as an overhead expense, the appraiser properly added this item to the other costs specified in section 402a (f) (1), *supra*.

 \* \* \* \* \* \* \*

There is no evidence in the instant case to rebut the statements contained in the report concerning the item referred to in subexhibits A and G, as "Entwick-lung, Versuche" [Development and Testing including Design], and the court is constrained to hold that, since this item includes the designing of new models, it was properly considered an element in the cost of materials and of fabrication in determining the cost of production of the subject automobiles.

Moreover, in view of the explanations in defendant's collective exhibit 1 concerning the item "inspection stations labor etc." as referring to "inspection of incoming materials used in the production, of incoming parts and accessories, of manufactured parts and automobiles, including running tests," it would appear that this element is so inextricably entwined into "the process employed in manufacturing \* \* \* such \* \* \* merchandise," as to constitute a production cost rather than an overhead expense.

In *Carey & Skinner, Inc.* v. *United States*, 3 Cust. Ct. 600, Reap. Dec. 4663 (appeal for review dismissed as untimely, 4 Cust. Ct. 590, Reap. Dec. 4711), also cited by defendant, the cost of certain blue-prints and designs for installation were included in the cost of fabrication, for purposes of arriving at cost of production value. These blueprints and designs were prepared in Canada by a Toronto engineer, and the cost *there* was the sum of $300. The engineer, called by plaintiff, testified that "he allocated $110 of said sum to the particular articles constituting the imported merchandise herein." (P. 602.)

The court said:

Counsel for the plaintiff also object to the item of $110 for blueprints and drawings. Inasmuch, however, as the plaintiff's own witness has testified that said item was properly allocated to the merchandise herein, we are of the opinion that the appraiser was amply justified in including it in the cost of production. [P. 603.]

We do not agree with defendant that these cases are authority for the inclusion, in constructive value of imported merchandise, of a payment made within the United States for services of installation that were performed wholly within the United States. The costs in issue in both the cases discussed, *supra*, were costs incurred in the foreign country where the imported merchandise was fabricated. That is not the situation here.

Defendant's ingenious argument presumes, and I think erroneously, that what was imported into the United States was an organ already installed in a Michigan church, to be valued as such. That is not the case. What was imported, and what, therefore, is dutiable, is an uninstalled assortment of organ parts, constructed abroad to be im-

ported into the United States, and there assembled and installed as an organ. It is stating the obvious to say that what is imported is what is dutiable. Defendant cites no authority for the proposition that services performed or work done within the United States, subsequent to importation, is a cost that forms part of constructed value of merchandise as imported. I know of no such authority.

Section 1001 of the Tariff Act of 1930 (19 U.S.C.) provides that "there shall be levied, collected, and paid upon all articles *when imported* from any foreign country into the United States" the duty rates prescribed therein. [Emphasis supplied.]

I take this to mean that customs duties are levied not only on merchandise *when imported*, but also as imported. What is done to imported merchandise after its importation, is not subject to the levy of customs duties.

Defendant appears to argue that the work of test assembly at the St. Hyacinthe factory is a part of this $1,900 cost item. That argument will not stand up against Mr. Roy's uncontradicted testimony that this payment did not include the cost of any work done at the factory.

The cases construing other appraisement bases, such as export value, have no relevance. Export value is, of course, a value predicated on price. The method of computing constructed value which Congress has provided in section 402(d), as amended, makes no mention of price. It is not part of valuation on the basis of constructed value.

I find as facts:

1. That the merchandise of this appeal consists of a church pipe organ, complete and unassembled, constructed in Canada and entered at Port Huron, Mich., on February 23, 1962, after the effective date of the Customs Simplification Act of 1956 (T.D. 54165); that said merchandise is not an article identified on the final list of the Secretary of the Treasury (T.D. 54521), issued pursuant to said act, and, therefore, is to be appraised under section 402 of the Tariff Act of 1930, as amended by said act.

2. That, on or about the date of exportation, such or similar merchandise, was not freely sold or offered for sale in Canada for exportation to the United States.

3. That, on or about the date of exportation, such or similar merchandise was not freely sold or offered for sale for domestic consumption in the United States.

4. That appraisement was made on the basis of constructed value under section 402(d), Tariff Act of 1930, as amended, at $14,940, plus installation expenses of $1,900, a total of $16,840.

5. That the purchase price of the organ, including transportation from the Canadian factory to Westphalia, Mich., installation in the

importer's church there, and customs duty, was $18,935; that the cost of installation was $1,900, which was paid by the Canadian seller to a representative in Detroit for installing the organ in St. Mary's Church, at Westphalia, Mich.

I conclude, as a matter of law:

1. That, at the time of exportation, there was no export value or United States value for the unassembled organ, subject of this appeal, as such values are defined in section 402 of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

2. That constructed value, as defined in section 402(d) of the Tariff Act of 1930, as amended, is the proper basis of appraisement of such merchandise.

3. That the installation charge of $1,900 properly forms no part of constructed value, as defined in section 402(d), Tariff Act of 1930, as amended.

4. That the statutory constructed value of the unassembled organ of this appeal, as imported, is $14,940.

Judgment will be entered accordingly.