**UNITED STATES**

v.

**BARR SHIPPING COMPANY, Inc.**

**A.R.D. 303; Reappraisement R65/25329.**

United States Customs Court,
Third Division, Appellate Term.
June 21, 1972.

Maletz, J., filed concurring opinion; Richardson, J., filed dissenting opinion.

Harlington Wood, Jr., Acting Asst. Atty. Gen. (Steven P. Florsheim, New York City Trial Atty.), for appellant.

Barnes, Richardson & Colburn, New York City (David O. Elliott, New York City, of counsel), William Eisner, Associate Counsel, for appellee.

Before RICHARDSON, LANDIS, and MALETZ, JJ.

LANDIS, Judge:

The issue in this application for review is whether the trial judge erred in holding the appraised value at first cost, plus 10 percent, plus packing and other costs, was separable and in holding that the only disputed element, namely the 10 percent, was not part of dutiable export value.

The decision before us for review was rendered by Judge Ford in an appeal for reappraisement of a Convair CV–990 Flight Simulator manufactured and exported by Redifon, Ltd., London, England, and appraised at New York as having a dutiable statutory export value [1] of £218,005 plus 10 percent, plus cost of packing and other costs of £2,000. The trial judge held that export value was the proper basis for appraisement and adjudged that, on that basis, the correct value of the flight simulator was £218,005, plus £2,000 for packing and other costs. Barr Shipping Company, Inc. v. United States, 64 Cust.Ct. 680, R.D. 11701 (1970).

For the purposes of this review, export value is conceded to be the correct statutory basis for valuation of the flight simulator.[2] Review here is, therefore, narrowly confined to the errors raised by appellant apropos of the amount of export value found by the trial judge. The substance of appellant's claimed errors boils down to its contention, as heretofore mentioned, that the trial judge erred in holding that the form of the appraisement at first cost, plus 10 percent, plus packing and other costs was separable and in holding that the only disputed element, namely, the 10 percent, was not part of dutiable export value.

The record, upon which we consider those errors, consists of the oral testimony of two witnesses and five documentary exhibits. The parties identified with the import transaction are Redifon, Ltd., London, England; Curtiss-Wright

[1]. Section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas.Dec. 295, T.D. 54165, defines export value as follows:

> (b) Export value.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

[2]. The trial judge found it unnecessary to consider an alternative claim, asserted by both parties herein, for appraisement on constructed value basis, section 402 (d), as amended.

Corporation, Electronics Division, East Paterson, New Jersey; and American Airlines, New York, N. Y.

The separability principle, which appellant concedes is a viable principle, but asserts is inapplicable to the appraisement in hand, has been described as a "framework of convenience for the analysis of disputed appraisements." United States v. Bud Berman Sportswear, Inc., 55 CCPA 28, 31, C.A.D. 929 (1967). Recently, the rule has had most frequent application to appraisements which, as expressed in Haddad & Sons, Inc. v. United States, 54 Cust.Ct. 600, 602, R.D. 10942 (1965), affirmed Id. v. Id., 56 Cust.Ct. 792, A.R.D. 205 (1966), cited by appellant, are "in terms of a first cost or ex-factory price, plus the disputed charges." Appellant postures that the rule is limited to appraisements at "first cost, ex-factory or per se price," and argues that the record is void of any evidence that the flight simulator was appraised at a first cost £218,005, ex-factory.

■ Notwithstanding that the separability rule, as appellee cites, is not necessarily limited to appraisements ex-factory, cf. United States v. Fritzsche Bros., Inc., 35 CCPA 60, C.A.D. 371 (1947); United States v. Freedman & Slater, Inc., 39 Cust.Ct. 717, A.R.D. 77 (1957); The A. W. Fenton Co., Inc. v. United States, 52 Cust.Ct. 405, R.D. 10660 (1964); Cleveland Twist Drill Co. et al. v. United States, 60 Cust.Ct. 893, R.D. 11542 (1968); Shalom Baby Wear, Inc. v. United States, 62 Cust.Ct. 856, R.D. 11641 (1969); Castle & Cooke, Inc., et al. v. United States, 64 Cust.Ct. 628, R.D. 11693 (1970), decided on rehearing Id. v. Id., 67 Cust.Ct. ——, R.D. 11757 (1971); H. M. Young Associates, Inc. v. United States, 64 Cust.Ct. 642, R.D. 11695 (1970), we find substantial evidence that the appraisement at £218,005, plus 10 percent, plus cost of packing and other necessary costs of £2,000, is of the form and substance intended to reflect that £218,005 represented a first cost, or ex-factory price. The intention is clearly evident from the appraiser's notice of action and increased duties to the importer (C.F. 5555, attached to the official papers) explaining that the appraised figure of £218,005, in essence, represented the invoice value, ex-factory. Castle & Cooke, Inc., et al. v. United States, 67 Cust.Ct. ——, R.D. 11757 (1971); cf. Dominick Butti v. United States, 44 Cust.Ct. 773, 777, 778, A.R.D. 119 (1960), affirmed Id. v. Id., 49 CCPA 1, C.A.D. 778 (1961). Additionally, on trial, the import specialist, who advisorily valued the flight simulator at the amount accepted by the appraiser, testified (R. 35) that the 10 percent which he added to £218,005 was intended to reflect a share of the proceeds paid to Curtiss-Wright Corporation in connection with the purchase of the flight simulator, after deducting expenses and duties. Since the 10 percent was the one element of the appraisement controverted and briefed below relevant to the issue of the export value of the flight simulator, cf. F. W. Myers & Co., Inc. v. United States, 52 Cust.Ct. 550, 552, R.D. 10750 (1964), the court below did not, in our opinion err when, for the purpose of decision, it concluded that the appraisement was separable, and presumptively correct as to all elements save only the disputed 10 percent added by the appraiser.

■ Appellant's remaining errors are summed up in appellant's argument that the trial judge erred when he found that the 10 percent paid to Curtiss-Wright Corporation, after deducting expenses and duty (which the appraiser added to the value of the flight simulator), represented an expense incurred at the option of American Airlines, subsequent to the time the flight simulator was packed by Redifon, Ltd. and readied for shipment to the United States. Appellant contends that upon a record "laden with evidence which conclusively establishes that Curtiss-Wright was a co-seller of the * * * [flight simulator], even though it might not have been involved in the manufacture of said * * * [flight simulator]", the 10 percent is profit and, therefore, part of dutiable export value. (Appellant's brief, pages 14, 15.)

The contract of purchase (exhibit 1), on which appellant relies, is relevant but, in our opinion, it does not necessarily establish all the facts bearing upon the dutiable value of the merchandise manufactured and exported pursuant to the contract. Cf. United States v. Enrique Vidal Sanchez, 15 Ct.Cust.Appls. 443, T.D. 42642 (1928). All merchandise, on export value basis, must be valued as defined in section 402(b). The record in this case substantially establishes that the relationship of the parties to the purchase was determined by factual circumstances, as appears from the following quotation from the trial judge's decision:

Curtiss-Wright became involved in this importation as it had been approached by American [Airlines] to produce this flight simulator. American was referred to Redifon by Curtiss-Wright. American however was reluctant to deal directly with a foreign supplier and requested Curtiss-Wright to act as liaison. An agreement, plaintiff's exhibit 2, between Curtiss-Wright and Redifon was entered into for the purpose of defining responsibilities. The agreement made Curtiss-Wright responsible to American for the importation of the simulator and the recipient of payments which in turn were paid to Redifon after deducting import duties, a royalty of 7½ percent, where applicable, and a mark-up not exceeding 10 percent of Redifon's unpacked ex-works price.

A change order such as exhibit 3 which was the 35th change request is a method enabling the purchaser to modify the simulator to bring it up to date or for other reasons. Curtiss-Wright did not participate in the price negotiations relative to change orders although it was advised of them in order to keep it fully knowledgeable of the changes. No engineers or technical advisers were sent to Redifon by Curtiss-Wright during the construction of the simulator.

Mr. Balbach testified on cross-examination that the difference in price paid by American to Curtiss-Wright and the amount submitted to Redifon represented approximately $70,000 paid in import duties and approximately 17 percent for overhead and general administrative expenses incurred by Curtiss-Wright, approximately $16,000 profit and a 7½ percent royalty. The royalty is known as the Dehmel royalty which Curtiss-Wright pays on all simulators sold by it even though not manufactured by it. This is based on an agreement with Mr. Dehmel who was the inventor of certain electrical systems used by Curtiss-Wright in the manufacture of its own simulators. [There is no evidence in the record in this case, however, that the Dehmel invention was indispensable to or used in any manner by Redifon in the manufacture of the imported flight simulator.]

\*   \*   \*   \*   \*   \*

\* \* \* [Plaintiff's exhibit 5, an affidavit of Eric William Warren, a director of Redifon since 1957] states that Curtiss-Wright [while denominated as seller in the agreement of June 1, 1961] had no part [whatsoever] in the design and construction of the involved simulator. The function of Curtiss-Wright was to handle details of importation into the United States, delivery to American and billing of American and payment of Redifon as well as general administrative liaison between American and Redifon. The affiant further stated that American insisted upon having Curtiss-Wright as a party to the contract as one it could hold accountable for contract performance. Such service, it was understood, would entitle Curtiss-Wright to a fee over and above the agreed price, unpacked ex-works from Redifon. [64 Cust.Ct., pages 683–684, 685.]

Upon the facts above stated, it is reasonable to infer, United States v. Hub Floral Manufacturing Co., 428 F.2d 848, 853, 57 CCPA 134, 139, C.A.D. 993 (1970), that American Airlines could have, as Curtiss-Wright when approached suggested, purchased the flight simulator directly from Redifon, Ltd.,

without the services of Curtiss-Wright.[3] To paraphrase what the court of appeals said in a somewhat similar factual situation, United States v. Enrique Vidal Sanchez, *supra*, 15 Ct.Cust.Appls. at page 451, accepting the above facts as conclusively established by the record, it appears that there was no reason, except its own convenience why American Airlines insisted upon transacting its business through Curtiss-Wright. Had American Airlines transacted its business otherwise, its contract price would have been 10 percent less and Redifon, Ltd. would have been saved the expenditure.

To sum up, the disputed 10 percent in this case is not such a charge as, "in the ordinary course of trade", constitutes a part of the export price of the flight simulator in question. The charge was occasioned by the unusual and extraordinary requirements of the purchaser. If American Airlines had been content to buy the flight simulator directly from Redifon, Ltd., it is established that in the ordinary course of trade for export such additional charge would not have been made (end of paraphrase).

The appraisement substantiates the ex-works or ex-factory price. The following cases support and point up that the trial judge correctly held that the 10 percent which Curtiss-Wright retained in remitting to Redifon, Ltd., the amounts paid by American Airlines under the principal agreement, is not part of dutiable export value: United States v. Case & Co., Inc., 13 Ct.Cust.Appls. 122, T.D. 40958 (1925); American Express Co. v. United States, 14 Ct.Cust.Appls. 53, T.D. 41553 (1926); United States v. Enrique Vidal Sanchez, 15 Ct.Cust. Appls. 443, T.D. 42642 (1928); United States v. Alfred Kohlberg, Inc., 27 CCPA 223, C.A.D. 88 (1940); United States v. Tapetes Luxor S. A., et al., 54 CCPA 116, C.A.D. 921 (1967); Rohner Gehrig & Co., Inc. v. United States, 3 Cust.Ct. 547, R.D. 4629 (1939), affirmed on review, United States v. Rohner Gehrig & Co., Inc., 4 Cust.Ct. 864, R.D. 4923 (1940); Rohner Gehrig & Co., Inc. v. United States, 7 Cust.Ct. 551, R.D. 5467 (1941), affirmed on review, United States v. Rohner Gehrig & Co., Inc., 9 Cust.Ct. 591, R.D. 5724 (1942); William Krocker v. United States, 25 Cust.Ct. 351, R.D. 7847 (1950); Kobe Import Co. v. United States, 28 Cust.Ct. 586, R.D. 8102 (1952); United States v. International Commercial Co., Inc., et al., 28 Cust.Ct. 629, R.D. 8112 (1952); Brauner & Co. v. United States, 44 Cust.Ct. 661, R.D. 9673 (1960); The Merthyr Company, Inc. v. United States, 47 Cust.Ct. 550, R.D. 10125 (1961); United States v. Henry A. Wess, Inc., 48 Cust.Ct. 700, A.R.D. 142 (1962).

The findings and conclusions of the trial judge are, accordingly, incorporated herein, and the decision below is affirmed.[4]

3. Appellant concedes that if appellee showed, "through the introduction of substantial evidence, that he had the option of not incurring the disputed cost or expense, whether it accrued prior to or after the time the merchandise was packed, ready for shipment to the United States, then he has proved that that disputed sum is not a part of the export value of the merchandise." (Appellant's brief, pages 12–13.)

4. Barr Shipping Company, Inc., a customhouse broker, filed this appeal for reappraisement on behalf of its principal Curtiss-Wright Corporation, importer of record, on Customs Form 4305 which it signed, as follows:

"BARR SHIPPING COMPANY, INC.
[signed] Peter Hachman
(Consignee or Agent)

NOTIFY:

CURTISS WRIGHT CORP.        52 BROADWAY, NEW YORK, NEW YORK
ELECTRONICS DIV.                           (Address)
35 MARKET STREET
EAST PATERSON, NEW JERSEY"

The dissent would *sua sponte* dismiss the appeal to reappraisement raising issue for the first time as to the authority of the broker to act as agent for im-

Judgment will so enter.

MALETZ, Judge (concurring).

I concur with Judge Landis' opinion but think it desirable to add a few comments with respect to the jurisdictional issue raised by Judge Richardson in dissent. For one thing, the dissent would limit the term "agent" as used in section 501(a) of the Tariff Act of 1930, as amended, to the "person who makes entry of imported merchandise on behalf of the consignee." Such a construction of section 501(a) is, I think, entirely unwarranted. There is no reason why—and the legislative history does not indicate to the contrary—an agent cannot be appointed for different purposes and why such appointment cannot be made at different times. Indeed, the law is clear that there is no prohibition against a consignee designating an agent for purposes of filing an appeal for reappraisement subsequent to entry of the merchandise by the consignee. Thus, the appellate term in BASF Colors & Chemicals, Inc. v. United States, 59 Cust.Ct. 834, 839, A.R.D. 228 (1967), stated:

> * * * The tariff act provides that entry may be made "by an agent authorized by him [the consignee] in writing under such regulations as the Secretary of the Treasury may prescribe" (section 484) and that an appeal for reappraisement may be filed by the consignee or his agent (section 501). *The statute does not provide that a consignee who has made entry itself is precluded from appointing an agent to file an appeal for reappraisement on its behalf, nor does it provide that the agent must be authorized in writing, and no date is specified in the statute by which time the agent must be appointed.* It is obvious, of course, that liability for increased duties remains with the consignee regardless of when or if an agent is appointed to file papers. Any notices would properly be sent to the consignee by customs officials, unless and until notified that an agent had been appointed. *There seems to be no compelling reason to hold that an agent my not be appointed at any particular stage of the proceedings provided that rights of third parties are not prejudiced.* [Emphasis added.]

*BASF* was affirmed on appeal—420 F. 2d 763, 56 CCPA 47, C.A.D. 952, 420 F. 2d 763 (1969)—on other grounds. However, the court referred to the jurisdic-

porter in appealing to reappraisement, neither side having argued or briefed the question. No case has been cited holding that a showing of authority to act as agent is a condition precedent to filing an appeal to reappraisement. Contrary to the dissent, see L. & E. Stirn v. United States, 34 Treas.Dec. 474, T.D. 37658 (1918):

> Where an agent or attorney in fact employed by an importing firm to do its general customhouse work calls for re-reappraisement in the name of his principals, and there is failure to prove that such agent or attorney exceeded his authority, held that such agent or attorney in calling for such reappraisements acted within the scope of his authority, and motions to dismiss such appeals as being unauthorized must be denied.
>
> * * * We may take judicial notice of the fact that in a majority of the cases which reach this court it is the practice for both protests and appeals to reappraisement to be prosecuted in the names of the customs brokers. * * * [United States v. C. J. Tower & Sons, 24 CCPA 456, 459, T.D. 48912 (1937).]

The court of appeals has also recognized that statutes giving the right of appeal are liberally construed. Wilmington Shipping Company v. United States, 52 CCPA 76, 79, C.A.D. 861 (1965), Lewis' Sutherland Statutory Construction, Section 717. In fact the court of appeals has indicated that not only could the consignee, as the one liable for payment of duties appeal for reappraisement, but that the consignee could appoint an agent to appeal for reappraisement, if there was action informing the Government of the agency. Wilmington Shipping Company v. United States, *supra*, at page 80; Hersey of Canada, Ltd. v. United States, 406 F.2d 1394, 56 CCPA 64, 66, C.A.D. 955 (1969).

tional question in footnote 1, as follows (420 F.2d at 765, 56 CCPA at 50):

1 Prior to deciding the merits of the case, the trial judge ruled on three questions raised by the appellee affecting the jurisdiction of the court. The judge treated appellee's contentions that the court was without jurisdiction as motions to dismiss and overruled them. On review, the Appellate Term held that the trial court was correct as to the jurisdictional question. The appellee has not raised those questions in this appeal. *We are satisfied that we have jurisdiction to determine the merits of the case.* [Emphasis added.]

In short, it is clear that the agency relationship under section 501(a) need not be "retrospective" to the time of entry, nor does that section require that the agent be the same person who entered the merchandise under section 484. This is to say that an agent for the purposes of section 501(a) may be appointed at any stage of the proceedings so long as "rights of third parties are not prejudiced." The nub of the matter is that sections 484, 485, 487 and 501 allow various acts to be performed through agents. However, there is nothing in the provisions which make an agency filing under section 501 dependent upon the establishment of an agency relationship under sections 484, 485 or 487.

Underscoring what has been said are the regulations of the Bureau of Customs, which, of course, are entitled to great weight in the interpretation of the tariff laws. Power Reactor Development Co. v. International Union of Electrical, Radio & Machine Workers, AFL–CIO, et al., 367 U.S. 396, 81 S.Ct. 1529, 6 L.Ed. 2d 924 (1961); Securities & Exchange Commission v. Chenery Corporation et al., 332 U.S. 194, 67 S.Ct. 1575, 1760, 91 L.Ed. 1995 (1947); National Labor Relations Board v. Hearst Publications, Inc., et al., 322 U.S. 111, 64 S.Ct. 851,

88 L.Ed. 1170 (1944); United States et al. v. American Trucking Associations, Inc. et al., 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940); Deutsch v. United States Atomic Energy Commission, 130 U.S.App.D.C. 339, 401 F.2d 404 (1968); Tobin v. Flour Mills of America, Inc., 185 F.2d 596 (CA8 1950); Brooks Transportation Co., Inc., et al. v. United States, 93 F.Supp. 517 (E.D.Va. 1950), aff'd 340 U.S. 925, 71 S.Ct. 501, 95 L.Ed. 668 (1951); John Rothschild & Co. et al. v. United States, 16 Ct.Cust.Appls. 442, 448, T.D. 43190 (1929). Against this background, it is to be noted that under section 8.19 of the Customs Regulations (1962),[1] any part or all "customs business" of the principal may be conducted by its agent. Stated otherwise, the regulations of the Bureau of Customs allow agents, such as customs brokers, to file appeals for reappraisement for their principals regardless of whether or not they were agents at the time of entry of the merchandise. Relevant in this respect is T. M. Duche & Sons, Inc. v. United States, 46 Cust.Ct. 571, R.D. 9904 (1961), aff'd on other grounds, 52 Cust. Ct. 624, A.R.D. 170 (1964), where the court held (p. 575) that in the sense and context of section 501(a) of the Tariff Act of 1930, as amended, the filing of an appeal for reappraisement is part of the "customs business" of the consignee.

This brings us to the question whether an agency relationship existed between the consignee—Curtiss-Wright—and the customhouse broker who filed the appeal. As Judge Landis' opinion makes clear, it is obvious from the official papers—which were received in evidence without objection—that Barr Shipping represented that it was filing the appeal for reappraisement as agent for Curtiss-Wright, the importer of record. Significantly, at no time at any stage in the proceedings in this case has the government challenged or even questioned this stated agency relationship. In short, considering that the existence of an

---

1. Section 8.19(a) provides in part that "[a] power of attorney may be executed for the transaction of a specified part or for all the customs business of the principal * * *."

agency relationship is undisputed, I cannot agree that it was incumbent upon Barr Shipping to prove its authority to act as agent. Indeed, on this aspect, the present situation is virtually on all fours with that which obtained in Rico Products Co., et al. v. United States, 46 Cust. Ct. 73, C.D. 2236, 191 F.Supp. 954 (1961). In that case, the court pointed out that "nobody challenged the *fact* of agency in the signers of the protests to sign and file protests in the names of the actual importers." [Emphasis in original.] 46 Cust.Ct. at 78. "Consequently," the court stated "there was no burden cast upon those who asserted themselves to be agents to prove that fact." *Ibid.* See also Yee Chong Lung & Co. et al. v. United States, 11 Ct.Cust.Appls. 382, T.D. 39191 (1922); United States v. C. J. Tower & Sons, 24 CCPA 456, 459, T.D. 48912 (1937). Indeed, in *C. J. Tower*—on which the dissent relies—the court held that although an express agency was not shown with respect to the filing of two of the appeals for reappraisement, the court "must presume" that such agency was accepted by the collector. 24 CCPA at 459. Accordingly, the court concluded that the customs broker in question had authority as agent under section 501 to file the two appeals for reappraisement. Further, it is to be added that nothing in *C. J. Tower* even suggests that an agency relationship must pre-date the entry; that question was simply not in issue.

Nor do I think that Wilmington Shipping Company v. United States, 52 CCPA 76, C.A.D. 861 (1965)—on which the dissent places major reliance—is in point. In *Wilmington Shipping*, a consignee of certain plywood filed appeals for reappraisement which were concededly untimely. However, it contended that though it was the consignee of the merchandise and solely responsible to the government for payment of duties, certain letters to the collector from the English seller of the merchandise—which were dated within 30 days after the notice of appraisement—should be accepted as written appeals for reappraisement and that this English seller was the agent of the consignee in writing the letters in question. The appeals court affirmed the dismissal of the appeals for reappraisement on the basis that the foreign seller was not a "consignee or agent" within the meaning of section 501 of the Tariff Act of 1930, as amended, and thus was not a party permitted by law to file an appeal for reappraisement. The court also noted that the name of the English seller did not appear on any of the entry papers, and that from the context of the documents themselves, it appeared that the seller was acting entirely on its own.[2] See also Wilmington Shipping Company v. United States, 52 Cust. Ct. 650, A.R.D. 175 (1964), aff'g *Id.* v. *Id.,* 50 Cust.Ct. 366, R.D. 10428 (1963). The situation here is entirely different. In the first place, Barr Shipping was not a foreign seller but rather a domestic customhouse broker. Second Barr Shipping's name appeared as agent not only in the appeal for reappraisement but also on various entry papers. Third, from the context of the official papers in the record, it appears that Barr Shipping was acting not on its own but as agent for the consignee, Curtiss-Wright. Finally, whereas in *Wilmington Shipping* the government vigorously challenged the status of the foreign seller as agent of the consignee, it made no challenge whatever to the agency status of Barr Shipping.

RICHARDSON, Judge (dissenting).

I dissent from the majority opinions. Were we to have properly before us the merits of the instant case, I would sustain the appraised value. The 10 percent addition in dispute merely reflects an amount withheld from the purchase price of the simulator by a co-seller (Curtiss-Wright) charged with the responsibility of collecting the purchase price from the purchaser (American Airlines) and, aft-

---

2. The court also held that the English seller's letters were insufficient as notices of appeals for reappraisement.

er deducting certain sums, remitting the balance to the other seller (Redifon). In the words of the appraising official, this item was the co-seller's "share of the proceeds." (R. 35)

Under the written agreement between Redifon and Curtiss-Wright on one side and American on the other received in evidence as plaintiff's exhibit 1, Curtiss-Wright is designated as a seller. This posture is reaffirmed in the subsequent unilateral written agreement executed by the sellers designated in the earlier agreement, received in evidence as plaintiff's exhibit 2, under which unilateral agreement remittances were to be made by one seller (Curtiss-Wright) to the other (Redifon). We are not privileged to vary the terms of the earlier written contract by parol evidence to show that the parties thereto acted in a manner contrary to the terms of their written agreement, if that be the purpose of appellee's proofs at the trial; and, therefore, I would agree with the objections on this score noted by counsel for the defendant at the trial (R. 32), and again in his brief submitted after trial (defendant's brief, pages 29–30), and preserved for review on this application.

And apart from the contract itself and the parol evidence rule, the record shows that Curtiss-Wright's participation in this transaction as a "seller" was indispensable to the acquisition of the subject flight simulator by American Airlines even if Curtiss-Wright had nothing to do with its manufacture. For it was only through Curtiss-Wright that the Dehmel invention on certain of the flight simulator's electronic systems was obtained—Curtiss-Wright apparently having the right to market this invention subject to the payment of royalty to the inventor which necessarily was included in the monies paid over by American Airlines to Curtiss-Wright (R. 23–24; page 23 of plaintiff's exhibit 1, and page 3 of plaintiff's exhibit 2). Thus, in my opinion the release of the Dehmel invention through the aegis of Curtiss-Wright cuts a far greater figure in this case, insofar as the determination of the status of the parties to the contract is concerned, than does any misgivings which American Airlines might have had about a direct transaction with the foreign manufacturer alone in the negotiations for the construction of the simulator.

However, we do not reach the merits of this case. Appellee has no standing to prosecute the instant reappraisement appeal. The official papers received in evidence disclose that Curtiss-Wright is the importer of record, made the entry, received the notice of increase in duties, the notice of appraisement, and hence, is the consignee. The designation "Consignee or Agent" appearing under the signature line on customs appeal for reappraisement form 4305 to which Judge Landis' opinion calls attention, when considered from the standpoint of "agency", is a kind of self-serving declaration of an alleged agent which our appeals court condemned in Wilmington Shipping Company v. United States, 52 CCPA 76, 80, C.A.D. 861 (1965). And no evidence was presented or case made at the trial to establish appellee-broker's authority to prosecute the instant appeal as "agent" of the consignee within the meaning of 19 U.S.C.A., section 1501(a) (section 501(a), Tariff Act of 1930, as amended). See Wilmington Shipping Company v. United States, *supra*, page 80. Nor could such a case be made here in view of the fact that the appellee did not enter the merchandise either in the capacity of the consignee's "agent" in accordance with 19 U.S.C.A., section 1484 (a) (section 484(a), Tariff Act of 1930, as amended by the Customs Simplification Act of 1953), or in any other capacity.

In the official papers before the court the name of Barr Shipping Company, Inc. appears on the printed entry form which was made and filed in the name of the consignee Curtiss-Wright. And in one other paper included among the official papers, namely, the consignee's agreement not to contest appraisement because examination of the merchandise is made elsewhere than at the appraiser's stores, Barr Shipping Company, Inc. ex-

ecuted this document as signatory for the consignee Curtiss-Wright. No other reference to Barr Shipping Company, Inc. appears of record in the official papers. Thus, the documentation of record itself supports only Barr Shipping Company's role as customs broker, and nothing more—a role significantly different from the statutory role of consignee's "agent" within the meaning of section 1501(a).

If the Court of Customs and Patent Appeals, as is admitted by Judge Maletz in his concurring opinion, did not pass on the agency issue decided by the appellate term of the Customs Court, in BASF Colors & Chemicals, Inc. v. United States, 59 Cust.Ct. 834, A.R.D. 228 (1967), it should not be considered as having affirmed the appellate term's decision on the agency issue. I can find no case prior to the *BASF* case in which any person not connected with the entry transaction even asserted the right to prosecute an appeal for reappraisement of an entry as agent under a post-entry appointment from the consignee. It would appear that if the statute contemplated a post-entry appointment of an agent that someone would have proceeded in this fashion prior to the *BASF* case.

Part of the history of the construction of the term *consignee's agent* as it is used in section 1501(a) derives from the decision of our appeals court in United States v. C. J. Tower & Sons, 24 CCPA 456, T.D. 48912 (1937). In that case the broker made five entries in its own name and also prosecuted the ensuing reappraisement appeals predicated upon these entries in its own name. But in two of these cases there was nothing in the entry papers to identify the broker as the "consignee" as was the case with the other three. And the question before the court in these two cases was whether the broker had standing to prosecute the reappraisement appeals. In holding that the broker had such standing, our appeals court observed (p. 459):

. . . The statute, section 501, Tariff Act of 1922, expressly provides for the filing of appeals "by the consignee, or his agent," and nowhere refers to the "real party in interest."

As to the other two cases, the invoices do not show the consignees, but, as has been stated, the entries were made by appellees *whose agency for that purpose we must presume was accepted by the collector. . . .* [Emphasis added.]

And of the five cases the court went on to state (p. 459–460):

. . . In the instant case *appellees in entering the merchandise became liable to the Government,* and doubtless would be liable upon their bond for any additional duties found to be due, whatever their ultimate rights for reimbursement, or payment, by those for whom they made the entries might be. It is unreasonable to suppose that the *collector* would look to or depend primarily upon the foreign shipper of the merchandise for such payment, under the facts here appearing.

Upon the record as recited, we think the right of appellees to take the appeals in all the cases sufficiently appears. . . . [Emphasis added.]

The pertinent language of section 501 of the 1922 Act being construed by our appeals court in *C. J. Tower* read:

. . . The decision of the appraiser shall be final and conclusive upon all parties unless a written appeal for a reappraisement is filed . . . *by the* consignee, or his *agent,* with the collector *within ten days after* the date of personal delivery, or if mailed the date of mailing of *written notice of appraisement to the* consignee, his *agent,* or his attorney. No such appeal *filed by the* consignee, or his *agent,* shall be deemed valid, unless *he has complied* with all the provisions of this Act relating to the *entry and appraisement* of such merchandise. . . . [Emphasis added.]

Thus, our appeals court in *C. J. Tower* was clearly of the opinion that the agency contemplated by section 501 was an agency arising from a pre-entry appointment of which the collector was mindful,

and further, that the court considered the common characteristic existing between *consignee* and *consignee's agent* to consist of their mutual liability to the Government for payment of duties accruing on "entered" merchandise.

The term "agent" as used in section 1501(a) is not used in that statute in any casual or ordinary sense of the word. The term "agent" appears four times in section 1501(a) in a context which is retrospective to the entry transaction itself [a feature which distinguishes reappraisement proceedings under section 1501(a) from protest proceedings under section 1514 dealt with in Rico Products Co. et al. v. United States, 46 Cust.Ct. 73, C.D. 2236, 191 F.Supp. 954 (1961), cited in one of the majority opinions herein]. The first sentence of section 1501(a) requires that the collector be aware of the identity of the consignee's agent prior to giving notice of appraisement. It is also clear from that sentence that the agent can compel the collector to give him notice of appraisement in appropriate cases if he requests such notice *prior to appraisement* of the merchandise. Thus, both of these circumstances involving usage of the term "agent" in section 1501(a) preclude any notion of "agency" under a post-entry appointment. And usage of the term "agent" in the second sentence of section 1501(a) is merely corollary to its usage in the first sentence of that statute. Moreover, it should be here noted that the exclusion of a post-entry "agency" from the purview of section 1501(a) was even more strongly emphasized in the language of that statute as it was enacted and in effect prior to the 1953 Customs Simplification Act wherein section 1501(a) contained a clause which read:

> No such appeal filed by the consignee or his agent shall be deemed valid, unless he has complied with all the provisions of this chapter relating to the entry and appraisement of such merchandise.

See in this connection the case of Florea & Co., Inc. v. United States, 11 Cust.Ct. 377, R.D. 5907 (1943); app. for rev. dismissed in 26 Cust.Ct. 665, R.D. 7994 (1951), involving the dismissal of a reappraisement appeal under the 1930 Tariff Act for non-compliance with this clause.

Thus, the present text of section 1501(a) as well as its history clearly affirms that the term "agent" as used in section 1501(a) means the person who makes entry of imported merchandise on behalf of the consignee in accordance with the requirements of section 1484(a), and further, that the judicial remedy of an appeal for reappraisement provided for in that statute exists solely as an accommodation to such person. See Levi Sondheimer & Co. v. United States, 32 Treas. Dec. 316, 323, T.D. 37077 (1917). Therefore, granted that statutes giving a right of appeal are at times liberally construed by the courts, such a doctrine would, nevertheless, be misapplied in a case such as this at bar where its application is contrary to the clear Congressional intent.

Nor can I be dissuaded from dissenting in this case [notwithstanding admonitions by the majority] by the fact that the parties, particularly the Government, have not seen fit to raise the jurisdictional issue which the instant facts present and to which my views are directed. In my opinion there is no requirement that in matters pertaining to jurisdiction, a court's pronouncements on the subject must await a signal from the parties. A court's concern as to its jurisdiction over issues tendered it by parties for solution is omnipresent, and the existence of such concern as to its jurisdiction in a case can never be made to depend upon the parties' diligence or lack of it in pressing the point. As our appeals court pointed out in United States v. Klytia Corporation, 29 CCPA 109, 113, C.A.D. 178 (1941), it is the court's duty to raise jurisdictional questions *sua sponte* and act upon them even if such questions are not referred to by the court below or by counsel for the parties. And neither of the majority views herein suggests that the question of appellee's authority to prosecute the involved reap-

praisement appeals as "agent" of the consignee is not of jurisdictional stature. The position of the majority would expand the judicial remedy of an appeal for reappraisement beyond its intended scope.

But even if *BASF* affirms the majority view in this case on the law, it most certainly disaffirms the majority view here on the facts. In *BASF* the appellate term explicitly called attention to the fact that the trial court had received evidence establishing the post-entry agency. The appellate term noted (59 Cust.Ct. at p. 836):

At the trial, Robert Chavkin, testified that he was the assistant vice president of Biddle Sawyer Corp. He stated:

Q. Did you authorize BASF Colors & Chemicals, Inc. to file the appeals to reappraisement which are before the Court this afternoon?—A. I did.

MR. BLAUVELT: Your witness.

MR. SPECTOR: No questions.

The appellate term went on to point out (p. 837):

In the decision below, Judge Wilson held that the appeals for reappraisement were sufficient to confer jurisdiction upon the court. He noted that the testimony that Biddle Sawyer authorized BASF Colors & Chemicals, Inc., to file appeals was uncontroverted. . . .

And, among other things, the appellate term concluded (p. 839):

In the instant case, it is clear that Biddle Sawyer is the consignee within the meaning of the Tariff Act of 1930 (sections 483–485; 501 . . .).

No evidence of the post-entry agency was presented in this case. The majority would simply exempt the "agent" from establishing his authority—a posture for which *BASF* clearly offers no support, and in which respect it accords with *Wilmington Shipping Company.*

The concurring opinion indicates a view that "the present situation is vir-tually on all fours with that which obtained in Rico Products Co. et al. v. United States, . . .", *supra.* Such a view overlooks the differences in philosophies in protest and reappraisement statutes and cases decided under those statutes prior to 1965.

An appeal to reappraisement can only be made by those connected with the entry transaction—the collector or district director, as the case may be, or the consignee or his agent, and ". . . the [statutory] language used respecting reappraisements of merchandise limits the importers' right of appeal to those cases only in which they have complied with the requirements of the law with respect to entry and appraisement of merchandise." Levi Sondheimer & Co. v. United States, *supra,* at page 323.

Though the door to the Customs Court in a protest action is closed to a collector, it is otherwise open to a broader group of people who need not be connected to the entry transaction—"the importer, consignee, or agent of the person paying such charge or exactions, or filing such claim for drawback, or seeking such entry or delivery."

What the judge was saying in *Rico Products Co.* case is that an administrative agency (the Customs Bureau) cannot make a regulation (section 17.2), providing that ". . . no protest signed by an agent or attorney shall be granted or denied by the collector unless there has been filed or is filed with the protest in the collector's office a power of attorney . . ·. authorizing such agent or attorney to make, sign, and file the protest."—a procedure "to govern the action of the collector in *his* treatment of protests filed with him insofar as the statute empowers him to consider the same . . . ."; refuse to make a determination under the regulation and transmit the protest to the Customs Court "with a request to the Assistant Attorney General to move the United States Customs Court to dismiss the purported protest because of the lack of timely authority of the agent or attorney to file the protest [in the customhouse]

in behalf of the principal." Section 17.2(a) of the Customs Regulations, as amended by T.D. 54080. In other words, the *ratio decidendi* of the case is that an administrative agency cannot provide how a judicial tribunal shall determine if it has jurisdiction of a protest, as a protest is "the initial pleading in a case or controversy in this court, and its treatment and disposition are governed by the laws and rules relating to practice and procedure before judicial tribunals." *Rico Products Co.* case, p. 77.

To quote further from the judge in the *Rico Products Co.* case, at page 79, section 17.2 of the Customs Regulations amounts to "nothing more than a prescription of the kind of proof of agency which shall be required by collectors for the purposes of *their actions* upon protests, and instructions to guide collectors should such proof be lacking. They do not appear to be mandatory in the sense of imposing a requirement not made by the statute with respect to the filing of protests, and, indeed, if that were their purport, it is highly questionable whether they would be lawful."

Also, the judge in his remarks was addressing himself to a distinction between an attorney in fact and an attorney at law and followed established precedents which provide that when an attorney of a court of record appears in a case, he is recognized as having authority to appear in the absence of any challenge to his authority. The person being discussed was an attorney at law. In support of his decision the judge quoted from Yee Chong Lung & Co. et al. v. United States, 11 Ct.Cust.Appls. 382, T.D. 39191, as follows:

"But aside from this, it has long been and now is the law of the United States that the appearance of an attorney in court for a party is evidence of his authority, or, as stated in Hill v. Mendenhal [Mendenhall] (88 U.S. 453, 22 L.Ed. 616):

"When an attorney of a court of record appears in an action for one of the parties, his authority, in the absence of any proof to the contrary, will be presumed. A record which shows such an appearance will bind the parties until it is proven that the attorney acted without authority."

For these reasons, the judgment of the trial court should be reversed and the reappraisement appeal herein dismissed, on jurisdictional grounds, since appellee failed to establish in the trial court that appellee was the consignee's "agent" within the meaning of section 1501(a).